[Civ. No. 13710. Second Dist., Div. Three. Mar. 31, 1943.]

FRANK SUNSERI, Appellant, v. DIME TAXI CORPORATION (a Corporation) et al., Respondents.

John J. Craig and James J. McCarthy for Appellant.

Reginald I. Bauder for Respondents.

WOOD (PARKER), J.—Plaintiff appeals from a judgment in favor of defendants, rendered upon a verdict, in an action for damages for personal injuries sustained by plaintiff, a pedestrian, as a result of being struck by a taxicab operated by defendants.

There are two defendants in this action, the Dime Taxi Corporation, a corporation, and F. J. Burns, owners of the taxicab. The taxicab driver was not included as a defendant in the amended complaint.

Plaintiff contends the evidence was insufficient to justify the verdict.

The following facts were uncontradicted: At the time of the accident, on March 1, 1941, about 11 p. m., the plaintiff, his wife, sister and brother-in-law intended to go to a bowling alley at 7113 Pacific Boulevard, Huntington Park. It was not raining at the time of the accident, but it had been raining during that day and water covering a space about 4 feet in width was running in the street gutter next to the curb in front of the bowling alley. They went in an automobile, operated by plaintiff, into a driveway near that address and stopped at a place in the driveway where it crossed a public sidewalk. All of the occupants of the automobile except plaintiff alighted therefrom at the place where it stopped on the sidewalk. Plaintiff then backed the automobile into the street and parked it at the curb. While he was returning to the place where his passengers had alighted, he was struck by defendants' taxicab. Pacific Boulevard was about 100 feet wide and extended north and south. The bowling alley was on the west side of the boulevard. Streetcar tracks were on each side and near the center, of Pacific Boulevard. An employee of defendants, who was driving defendants' taxicab in a northerly direction on Pacific Boulevard east of the center of the boulevard, turned the taxicab to the left and proceeded west toward the driveway south of the bowling alley. Several cars were parked at the west curb of Pacific Boulevard in the vicinity of the bowling alley. The street and driveway were well lighted and the windshield of the taxicab was clear. Adjoining the bowling alley building on the south side there were 3 business buildings. South of those buildings there was a driveway to a parking lot in the rear of those

buildings. The driveway was about the width of an automobile, and was a continuation of a driveway that commenced at the west curb of Pacific Boulevard and extended across the public sidewalk which was in front of said buildings. In other words, there was a driveway, south of the bowling alley, extending east and west from Pacific Boulevard across the public sidewalk into a parking lot at the rear of the bowling alley and the other buildings. The defendants had a taxicab parking station in the parking lot. Adjoining the bowling alley building on the north side there was a business building. North of that building there was another driveway. The fronts of the buildings referred to were about equi-distant from the street curb. The public sidewalk, which was cement, extended from the fronts of the buildings to the street curb.

Plaintiff testified in substance as follows: Plaintiff backed the automobile out of the driveway and parked it at an angle to the curb (which was the proper way to park at that place), in the first parking space north of and about 4 feet from that driveway. As parked, the left front door of the automobile was farther from the curb than the right front door. In order to avoid stepping in the water in the gutter, plaintiff alighted from the left front door, walked on his tiptoes in the street next to the water in the gutter, in a southerly direction toward the driveway, looking for a place to cross over the water and go upon the sidewalk. While walking toward the driveway, he was conversing with his brother-in-law, LoPorto, and "exchanging words" with his wife and sister who had started to walk north toward the bowling alley. He could not see down the street; he "just didn't look." He could see down one side of the street but he "just wasn't looking down there at all." He saw a big open space and cars toward Florence Avenue (which was south of the bowling alley). He did not look to see whether there were any northbound cars in the vicinity of the driveway. He paid no attention as to whether there were any northbound cars in the vicinity of that driveway. He looked but did not see any cars. He looked while he was facing south but did not see any car coming toward him. At the entrance of the driveway, he stepped over the water onto the driveway in one step, and then onto the sidewalk in another step. When he stepped on the sidewalk, he was struck from the rear by defendants' taxicab. He was struck below his knees while in

the act of taking his second step. He had one foot on the sloping part of the driveway and one foot on the level part of the sidewalk when he was struck. He was on the flat portion of the sidewalk when he was struck. He stepped over the water, not into it, but his toes "just about touched the water." He did not jump, but stepped into the water about 1 foot and then stepped a "good 3 feet" over it onto the driveway. He fell on his arms and rolled over westerly when he was hit. He was knocked flat on the sidewalk and was under the taxicab up to his hips, but the taxicab backed up immediately. He was stunned when he was struck, but when he came to and "turned around and looked," the bumper of the taxicab was close to the curbline. He had no discussion with anyone at the scene of the accident, but he heard a few mumbling words after he came to, to the effect that he was hit when he was in the street and was knocked 50 feet upon the sidewalk.

Plaintiff's brother-in-law, LoPorto, testified in substance as follows: He saw plaintiff park his car and walk back about 5 feet to the driveway. He did not remember whether plaintiff looked in the direction from which the taxicab was coming, but he (LoPorto) saw the cab make the left turn on the streetcar tracks in the middle of the street just as plaintiff was stepping over the water. He watched it come toward plaintiff, who was facing LoPorto (LoPorto was on the sidewalk, facing the street). When he first saw the taxicab it was in the middle of the street, and plaintiff was on the sidewalk. He first saw the taxicab when it was "running into the driveway" and plaintiff was "laid down on the sidewalk." He first saw the taxicab when it was "back about 5 feet," after he saw plaintiff. He first saw the taxicab when its lights came toward him. He first saw the taxicab when it was facing north and it "all at once" turned to the west. The only thing he remembered was when the taxicab struck plaintiff and then backed up. He had no conversation with the police officers at the scene of the accident, and he did not tell them that plaintiff had attempted to jump over the water. He called the officers' attention to plaintiff's clothes, which were all dry except the toe of his shoe. The taxicab driver told the officers he knocked plaintiff 50 feet, and he (the taxicab driver) told the witness he hit plaintiff in the street.

Plaintiff's sister testified in substance as follows: She and plaintiff's wife had started to walk on the sidewalk toward the entrance to the bowling alley (which was in a northerly

direction from the driveway), and that plaintiff was on the sidewalk when she first saw him after he had parked his automobile. She saw him take "not more than" one step, and she then turned her head toward Mrs. Sunseri and heard a crash. She turned around and saw plaintiff lying on the sidewalk with the taxicab "almost on top" of him and then the taxicab backed away about 2½ feet.

Plaintiff's wife testified in substance the same as his sister, except as follows: She saw plaintiff step over the water. She was facing north at the time of the accident. She recalled no conversation at the scene of the accident as to whether plaintiff stepped or jumped over the water.

A police officer who, according to testimony of the taxicab driver, arrived at the scene about 10 minutes after the accident, testified in substance as follows: Plaintiff was sitting in the center of the driveway, which was south of the bowling alley, when they arrived. There was another driveway north of the driveway where plaintiff was sitting, and plaintiff's automobile was parked in the first space north of this north driveway (not north of the south driveway as plaintiff testified), a distance of approximately 29 feet from where plaintiff was when the witness arrived. He discussed the accident with plaintiff and LoPorto. Plaintiff told him he jumped over the puddle of water at the time of the accident. He found plaintiff's clothes were dry when he examined them at the hospital.

Another police officer, who arrived at the scene with the preceding witness, testified in substance as follows: He had taken notes at the scene of the accident and had refreshed his memory therefrom. Plaintiff was sitting in the driveway when the witness arrived. LoPorto told him plaintiff was attempting to jump across the stream of water in the gutter and was hit by the taxicab. He measured the distance from plaintiff's parked automobile to where plaintiff was sitting in the south driveway and the distance was 28 feet. He talked with the driver at the scene of the accident but did not hear him, or anyone else, say he struck plaintiff and knocked him 50 feet. He measured the red zone south of the south driveway and it was 9 feet in length.

The taxicab driver testified in substance as follows: He was traveling north on Pacific Boulevard, stopped for southbound traffic and then proceeded to complete a left turn into the driveway. He was traveling about 6 or 8 miles an hour when

he turned toward the driveway and, although he looked, he saw no one. The first he knew of the accident was when he felt a "thump" and saw plaintiff's head above the hood of the taxicab. The impact put plaintiff in a sitting position on the right side of the front bumper. He applied the brakes and stopped immediately, at which time plaintiff rolled forward in a westerly direction onto the incline of the driveway. He stopped the taxicab at the curb, with the front wheels in the water, and he did not move the cab from that place before the police officers arrived. The taxicab had not started up the elevation of the driveway. While he was going to the place in front of the taxicab where plaintiff was, he noticed plaintiff's 3 companions strolling in a northerly direction. Plaintiff "hollered" and they rushed back to the scene of the accident. He did not tell anyone he hit plaintiff and knocked him 50 feet.

Plaintiff asserts that the driver of an automobile who intends to make a left turn between intersections and enter a private driveway must yield the right of way to a pedestrian who is on the private driveway. In support of that contention he cites sections 551 and 553 of the Vehicle Code. Section 551 provides that a driver who intends to make a left turn within an intersection is required to yield the right of way to a vehicle within the intersection approaching from the opposite direction. Section 553 provides that a driver who intends to enter a highway from a private driveway is required to yield the right of way to vehicles approaching on the highway. His argument is that since a driver who intends to make a left turn within an intersection, or enter a highway from a private driveway, is required to yield the right of way under the circumstances referred to in said sections of the Vehicle Code, therefore, "logically," a driver who intends to make a left turn between intersections and enter a private driveway is required to yield the right of way to a pedestrian who is on the driveway. It is not necessary, in this case, to determine the legal sufficiency of that assertion. That assertion, as it relates to this case, assumes it to be a fact that plaintiff was on the driveway when he was struck. The facts were determined by a jury and the verdict was for the defendants. It was not necessarily an implied finding of the jury that plaintiff was on the driveway or sidewalk when he was struck. There was testimony by the taxicab driver that the taxicab stopped at the curb, had not started up the elevation

of the driveway, and its front wheels were in the water, when the taxicab stopped after it had struck plaintiff. Plaintiff gave conflicting testimony concerning, among other things, his actions in crossing the water in the gutter. On one occasion, he said he stepped over the water and onto the driveway in one step, but did not step in the water. On another occasion, he said he stepped in the water at a place about 1 foot from the street side of the water and then stepped a "good 3 feet" over it onto the driveway. His brother-in-law made inconsistent statements concerning the place where the taxicab was when he first saw it. Some of the different places where the taxicab was when he first saw it, according to his testimony, were as follows: (1) in the middle of the street and facing north when plaintiff was stepping over the water; (2) "running into the driveway"; (3) "back about 5 feet" after he saw plaintiff; (4) when its lights came toward him (the witness); and (5) when it was facing north and it "all at once" turned to the west. The evidence was sufficient to justify a finding of fact that plaintiff was not on the driveway when he was struck.

█ Plaintiff asserts further that "defendant had the duty, before he drove into the private driveway which intersected the sidewalk, to make the turn only when he had ascertained that the driveway was clear, and that no pedestrians were using said driveway and sidewalk." This contention is that the taxicab driver was required to know before making the turn that his contemplated movement of the taxicab could be made in safety. An automobile driver is not required to know that such a movement of an automobile can be made in safety. The requirement is that the driver take the precautions which a reasonably prudent person would take under the circumstances reasonably appearing to him at the time. (*Spear* v. *Leuenberger*, (1941) 44 Cal.App.2d 236, 247 [112 P.2d 43].) This requirement is recognized by plaintiff in his brief wherein he states: "The defendant should not have turned his vehicle into the driveway unless such movement could be made with *reasonable* safety. . . ." (Italics added.) This further assertion of plaintiff, relative to the duty of the driver before going upon the driveway, is also based upon the erroneous assumption that it was necessarily an implied finding of the jury that plaintiff was on the driveway.

█ The plaintiff and defendants were required to exercise ordinary care. Whether the defendants were guilty of negli-

gence which proximately caused the injury, and whether the plaintiff was guilty of negligence which contributed proximately to the injury, were questions of fact to be determined by the jury. The jury had the benefit of the personal observation of the witnesses.

There were substantial conflicts between the evidence offered by plaintiff and that offered by defendants Also there were conflicting statements in the testimony of the witnesses called in behalf of plaintiff, which related to: whether plaintiff looked or did not look for moving automobiles; plaintiff's manner of crossing the water; where plaintiff was when he was struck; and where the taxicab was when plaintiff's brother-in-law first saw it. It was within the province of the jury to determine what weight should be given to the evidence.

Upon an appeal in which it is contended that the evidence was insufficient to support the verdict, the reviewing court is not empowered to disturb the verdict if there was substantial evidence to support the verdict. (*Crawford* v. *Southern Pacific Co.*, (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

Plaintiff contends that it should be concluded as a matter of law, against the verdict of the jury, that defendants were guilty of negligence and the plaintiff was not guilty of contributory negligence. To make that conclusion the evidence must be such that there is no substantial conflict as to the facts, and from the facts reasonable persons can draw only the inference that defendants were negligent and plaintiff was not contributively negligent. (*Crawford* v. *Southern Pacific Co., supra,* (1935) 3 Cal.2d 427, 429.) The conflicts in the evidence in this action preclude the drawing of that inference and conclusion.

The judgment is affirmed.

Shinn, Acting P. J., and Bishop, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1943. Carter, J., voted for a hearing.