[Civ. No. 14048. First Dist., Div. Two. Jan. 24, 1950.]

DANIEL JOSEPH LOWE, Appellant, v. MARIANO KWONGKUI LEE, Respondent.

D. W. Brobst for Appellant.

Charles V. Barfield and Franklin A. Plank for Respondent.

GOODELL, J.—Plaintiff appeals from a judgment rendered pursuant to a verdict for defendant in an action for personal injuries. The injuries resulted from a rear end collision between a Studebaker sedan driven by defendant and a Chevrolet driven by one Chew and in which plaintiff was riding.

Plaintiff was employed as a pianist in a cocktail lounge in San Francisco from 8 p. m. to 12 p. m. Shortly before midnight on May 3, 1947, Chew called for him at the lounge and

offered him a ride home across the bay. They drove to a café and had dinner, thence across the bay bridge, traveling in the middle eastbound lane.

Defendant, driving his Studebaker toward Oakland and accompanied by his wife, had crossed the bridge in the southerly lane, and while on the level part of the easterly approach between the toll gate and the incline stopped behind a Buick which had stopped behind a stalled car. After two or three minutes the Buick moved out of the southerly lane into the middle lane and Lee followed one or two car lengths behind. The right front end of Chew's Chevrolet collided with the left rear of Lee's Studebaker just as it had moved into the middle lane, resulting in severe injuries to plaintiff.

Lee testified that before he started up he looked back and saw a car following in the lane next the center line at a distance of 400 or 500 feet, traveling, as he thought, within the speed limit. He gave an arm signal, started up, and did not again look back. Lee testified that after the collision Chew said, "Oh, I didn't even see." Lee's wife corroborated him in all substantial respects.

Plaintiff testified that he saw no signal but first saw the Studebaker ahead at a distance of 100 or 200 feet, and elsewhere he said that as they were traveling in the middle lane "all of a sudden an automobile moved out in front of us" and the collision was "practically simultaneous."

Chew testified that he saw no signal but saw the car 100 or 150 feet ahead turn suddenly into his lane and that he applied his brakes about 75 feet before they struck. He testified that while waiting for plaintiff at the lounge he had a bottle of beer. A half filled bottle of brandy was on the front seat of the car after the collision but Chew said that this was carried in the glove compartment for religious purposes.

Two highway officers testified that Chew's breath was strongly alcoholic, not resembling the odor of beer, and that a statement then given by him, in which he admitted operating his vehicle at 40 miles per hour (which exceeded the limit), was incoherent but that such incoherence was due to his own injury and not to intoxication.

From the foregoing summary it is apparent that there was evidence sufficient to support any one of four conclusions, namely (1) that defendant alone was negligent; (2) that Chew alone was negligent; (3) that defendant and Chew were simultaneously negligent, or (4) that the accident was unavoidable.

■ Appellant's principal contention is that the giving of conflicting and misleading instructions on imputed negligence and agency was prejudicial error.

In an instruction proposed by plaintiff the jury was told unequivocally "that the driver's negligence, if any, may not be imputed to the plaintiff . . ."

Later, on the court's own motion the jury was instructed that any negligence of the driver "is not imputable to or chargeable against said plaintiff, nor is he in any manner, *except as otherwise herein instructed,* to be considered by you as legally responsible therefor . . ."

The phrase just emphasized by us created a conflict since the jury had been already told in effect that imputed negligence was not in the case.

Then the exception to which the jurors had been thus alerted was given them in this instruction proposed by defendant: "if you find . . . Chew was driving and controlling his automobile at the time of this collision as the agent of plaintiff Lowe, and if you further find that he was driving and controlling said automobile in the course and scope of his agency, then any negligence on the part of . . . Chew is imputed to and in law becomes the negligence of the plaintiff . . ."

Incidentally, the jurors were not instructed as to how or in what manner Chew could have become plaintiff's agent or as to the meaning of "the course and scope of his agency."

It is true that defendant pleaded plaintiff's contributory negligence by alleging that plaintiff and Chew were engaged in a joint enterprise; that both had the joint right of control, and control, of the operation of the automobile and that Chew was the agent of plaintiff in such operation, but there was no evidence to prove that the control or right of control of Chew's car reposed in anybody but Chew. Chew testified: "Q. . . . what was your purpose in coming in there at that time? A. Well, I come in there to take him home, see. At that time I was living on this side, too, every once in a while I made a practice of taking him home on this side, taking him over there and taking him over to this side." Further: "Q. Now, was Mr. Lowe paying for the ride or buying any gasoline or anything of that kind? A. Oh no, we never do that. Q. You were just taking him home as a friend? A. Oh yes, sure."

■ Appellant testified that he did not drive an automobile and never had driven one; that his eyesight was impaired by cataracts which affliction was congenital. He testified:

"Q. Did you have anything to do with the operation of the automobile that night? A. No sir . . . Q. How come that you were riding in Mr. Chew's automobile that night? A. Mr. Chew came in and said that he was going back to the Brookfield Central Market and that he would be very glad to take me with him as far as my house. Q. Had he taken you home on other occasions? A. Oh, yes, some times before." The foregoing was the only evidence touching appellant's connection with the car.

In the recent case of *Edwards* v. *Freeman,* 34 Cal.2d 589 [212 P.2d 883], a son while driving his mother down town for an eye examination had a collision in which she was injured. She sued the driver of the other vehicle who urged the defense that the son was his mother's agent and that his negligence was imputable to her. After summarizing the evidence relied on to show agency the court said: "To permit a finding of agency upon this evidence would be, in effect, to hold that one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent. This is not the law. [Citations.] In the absence of the essential characteristic of the right of control, there is no true agency and, therefore, no 'imputation' of the driver's negligence to the passenger [citations]."

This language is perfectly applicable to the evidence in the instant case.

To the authorities cited in that case, the following might be added: *Spence* v. *Fisher,* 184 Cal. 209, 212 [193 P. 255, 14 A.L.R. 1083]; *Buelke* v. *Levenstadt,* 190 Cal. 684, 689 [214 P. 42]; *Pope* v. *Halpern,* 193 Cal. 168, 174-5 [223 P. 470]; *Kelley* v. *Hodge Transp. System,* 197 Cal. 598, 603 [242 P. 76]; *Peccolo* v. *City of Los Angeles,* 8 Cal.2d 532, 538 [66 P.2d 651]; *Walker* v. *Adamson,* 9 Cal.2d 287, 290 [70 P.2d 914] and *Campagna* v. *Market Street Ry. Co.,* 24 Cal.2d 304 [149 P.2d 281].

The following language in the Edwards case likewise applies here with equal force: "The verdict may have resulted from the tenable view of the evidence that defendant was not guilty of negligence proximately causing the collision, or it may have resulted from the also tenable view of the evidence that simultaneous negligence of both drivers caused the collision, coupled with the untenable view of the law, upon this record, that Ray's [substitute Chew's] negligence could be

'imputed' to bar plaintiff's recovery.'' Accordingly, we must follow that case in holding that "it was error to submit the issue of imputed negligence to the jury and the error was clearly prejudicial because the inadequate and confusing instruction on the subject of agency at least *permitted* the jury to find such a relation (if it be not understood as directly suggesting such a conclusion) . . .''

 There is a factor in this case not present in the Edwards case, which aggravates the error of the agency instruction. It is the direct conflict between that instruction and the one which told the jury without qualification that there was no imputed negligence in the case.

In *Akers* v. *Cowan,* 26 Cal.App.2d 694, 699 [80 P.2d 143], the court said: "It has been frequently held that the giving of an erroneous instruction is not cured by the giving of other correct instructions, where the effect is simply to produce a clear conflict in the instructions and it is not possible to know which instruction was followed by the jury in arriving at a verdict.'' (Citing *inter alia Starr* v. *Los Angeles Ry. Corp.,* 187 Cal. 270 [201 P. 599].) The Akers case was followed in *Westberg* v. *Willde,* 14 Cal.2d 360, 369-371 [94 P.2d 590].

Respondent invokes the rule that the instructions must be read as a whole and cites a group of cases holding "that even though the evidence may not be sufficient to sustain a cause of action or defense to which an instruction applies, a reversal may not be had upon that ground if the evidence as to other causes of action or defenses is sufficient to sustain the verdict'' (*Brandes* v. *Rucker-Fuller Desk Co.,* 102 Cal.App. 221, 228 [282 P. 1009]) and "that in order to warrant the giving of an instruction it is not necessary that the evidence upon the issue be clear and convincing, it being sufficient if there be 'slight' or 'some' evidence upon that issue'' (*Id.,* p. 227). Those cases are not in point because here the conflicting instructions made it impossible "to know which instruction was followed by the jury'' (Akers case, *supra*) and because "there was no evidence whatever upon which the instructions complained of were based.'' (Brandes case, pp. 228-9.)

 Appellant, relying on *Westberg* v. *Willde,* 14 Cal.2d 360, 369-371, *supra,* also contends that there was prejudicial error in the giving of the instruction "that any violation of the provisions of the Vehicle Code . . . to be read to you shortly, unless otherwise therein provided, is presumptively an act of negligence, and conclusively so until rebutted by

evidence that it was justifiable or excusable under the circumstances.''

The court then read the basic speed law (Veh. Code, § 510) and immediately thereafter instructed the jury ''that on that portion of the bridge approach or highway where the . . . collision . . . occurred a prima facie limit of 35 miles per hour was applicable.''

Chew admitted going 40 miles per hour *which was a violation,* hence the instruction in broad terms as to *any* violation placed the burden of exculpation on him. Section 513, Vehicle Code, however, provides that: ''*Exceeding Prima Facie limit not Negligence as Matter of Law.* In any civil action proof of speed in excess of any prima facie limit declared in Section 511 hereof at a particular time and place shall not establish negligence as a matter of law but in all such actions it shall be necessary to establish as a fact that the operation of a vehicle at such excess speed constituted negligence.'' It is true the court did not read the second paragraph of section 511 to the jury (as was done in the Willde case) but it would seem that the instruction that *any* violation was presumptive negligence was just as harmful as if 511 had been read since it placed the burden on the wrong party. It is not necessary to decide this question, but in anticipation of a second trial it is proper to say that the instruction appears to be an incorrect statement of the law.

Appellant also complains of the instruction which, after telling the jury that the negligence of Chew was not imputable to his guest the plaintiff (''except as otherwise herein instructed'') went on to say that ''Such rule, however, does not allow the passenger or guest to shut his eyes to danger in blind reliance upon the unaided care of another without consulting the consequences of the omission of such care, if any.'' It is not necessary to decide this question but it would seem that there was nothing in the case to warrant the part of the instruction last quoted.

The judgment is reversed because of the conflicting instructions first discussed herein.

Nourse, P. J., and Dooling, J., concurred.