123 Cal.App.2d 235 (1954)
GEORGE WASHINGTON, Respondent,
v.
CITY AND COUNTY OF SAN FRANCISCO, Appellant.
Civ. No. 15655. 
California Court of Appeals. First Dist., Div. One. 
Feb. 17, 1954.
 Dion R. Holm, City Attorney, and Thomas M. O'Connor, Deputy City Attorney, for Appellant.
 Keith, Creede & Sedgwick for Respondent.
 FINLEY, J. pro tem. [fn. *]
 This is the second appeal in this case. The first was taken by plaintiff and resulted in this court setting aside a judgment for defendant notwithstanding the verdict for plaintiff and is reported in 111 Cal.App.2d 368 [244 P.2d 774]. Defendant then moved for a new trial, which motion was denied, and judgment was entered upon the verdict for plaintiff. Defendant appeals from this judgment on the ground that certain instructions not warranted by the evidence were given to the jury.
 Appellant's police car, an emergency vehicle, was proceeding north on Divisadero Street. At the intersection of Divisadero with Bush Street the police car collided with a Hudson automobile traveling easterly on Bush Street and driven by one Melvin Garner. The impact carried the vehicles onto the sidewalk at the northeast corner of the intersection where they struck and injured respondent.
 The only point raised here concerns the propriety of giving five instructions which, as stated above, appellant claims were not warranted by the evidence.
 The first two instructions complained of set forth in substance the provisions of section 454 of the Vehicle Code and the duty of the driver of an emergency vehicle when confronted with a situation similar to that with which the initially nonnegligent person is confronted under the last clear chance doctrine. The next two instructions, in effect, charged the jury that the question of whether the police car was being driven in response to an emergency call was a question of fact for them. The fifth instruction states, in effect, that it was a question of fact for the jury whether the vehicle was displaying a red light and was sounding its siren at the time of the collision.
 Appellant makes no claim that the instructions complained of are not correct statements of law, so we will not set them *238 forth here. As to the first two instructions, its position is that there was no evidence that the officer driving the police car did anything which would constitute negligence were it not for the exemption accorded drivers of emergency vehicles under the provisions of section 454 of the Vehicle Code, and that there was no evidence that the officer had either the means or the opportunity to prevent the collision after seeing the Garner car. To put it another way, appellant contends that there was no evidence that the officer driving the police car had a last clear chance to avoid the collision.
 [1] In considering the testimony with a view to determining whether, as a matter of law, there was sufficient evidence to justify the court in giving the instructions complained of, this testimony must be considered in a light most favorable to respondent, for in order to find that the giving of any certain instruction was not warranted by the evidence, the court must find that, as a matter of law, there is in the record not even slight or inconclusive evidence on the point covered by the instruction. In 24 California Jurisprudence, page 832, the rule is stated as follows: "In order to warrant the giving of an instruction it is not necessary that the evidence upon an issue be clear and convincing, it being sufficient if there be slight or, at least, some evidence upon the issue. [2] Even though the evidence may not be sufficient to sustain the cause of action or defense to which an instruction applies, a reversal may not be had if the evidence on other defenses is sufficient to sustain the verdict." (Emphasis added.)
 And in 53 American Jurisprudence, page 457: "In determining whether there is evidence that will warrant an instruction, the court does not pass on the weight and sufficiency of the evidence. It is not error to submit an instruction covering a theory advanced by a party if there is any evidence on which to base it, although it may be slight and inconclusive, or opposed to the preponderance of the evidence." Numerous cases are cited in these volumes in support of the rule as stated. (See, also, Brandes v. Rucker-Fuller Desk Co., 102 Cal.App. 221 [282 P. 1009]; and Lowe v. Lee, 95 Cal.App.2d 685 [213 P.2d 767].)
 [3] The testimony of the witnesses in this case places the speed of the police car at between 30 and 60 miles per hour just before reaching or at the intersection, and the speed of the Garner car at between 20 and 50 miles per hour. The evidence as to when the cars entered the intersection varies *239 from testimony that they entered at or about the same time to testimony that the Garner car had entered the intersection while the police car was still about 5 to 10 feet away.
 Garner testified that he did not see the police car until about the instant of the collision. The officer who was driving the police car was killed, but the testimony of two of the three other officers who were passengers in the police car varied as to when each saw the Garner car. One said it was when the police car was from 10 to 15 feet south of the south crosswalk on Divisadero and when the Garner car was approximately the same distance on the west side of the crosswalk on Bush. Another said that when he first saw the Garner car it was about 10 feet from the property line on the west side of Divisadero Street, and at the same time the police car was adjacent to the property line on the south side of Bush Street. There was testimony that the police car was in second gear and that from a distance of 55 feet south of the southerly curb line of Bush Street there was an unobstructed view over the last 120 feet of the westerly approach to the intersection, which distance increased as the police car approached nearer to the intersection.
 Viewing the testimony above outlined most favorably to respondent, as we must, we cannot say, as a matter of law, that the jury could not have legitimately believed that the police car approached the intersection in second gear at a speed of 30 miles per hour; that from a point 55 feet south of the southerly curb line of Bush Street the driver had an unobstructed view of the last 120 feet of the westerly approach to the intersection, and by the exercise of ordinary care could have and should have seen the Garner car traveling on Bush Street at anywhere between 20 and 50 miles an hour; that it could have been observed that Garner, the driver, did not see the police car and was making no effort to slow down or stop and was proceeding either that much faster than the police car or was that much nearer the intersection that it could reasonably have appeared probable that he would not stop, but would enter the intersection at about the same time as or ahead of the police car, and that unless some immediate action were taken there would be a collision.
 In the recent case of Buck v. Hill, decided by this court and reported in 121 Cal.App.2d 352 [263 P.2d 643], the elements necessary to bring the doctrine of last clear chance into operation are set forth and discussed in connection with application of that doctrine to vehicles approaching *240 each other at high rates of speed. It is said there, at page 360: "While it is true, as contended by defendants, that no California case has applied the doctrine to a situation where moving vehicles were approaching each other at the speeds in this case, that fact, however, should not bar its application here. Its application is not determined by speed or lack of speed alone, but by the question of whether the elements of the doctrine are present." And further quoting from that opinion (p. 359): "As said in Bagwill v. Pacific Electric Ry. Co., 90 Cal.App. 114 [265 P. 517], 'Like the body of the law of negligence, to which the doctrine [last clear chance] is appended, the test remains as that of ordinary care under all of the circumstances.' (P. 121.) 'We cannot say as a matter of law that he did not, by exercising ordinary care, have the last clear chance to avert the collision--something more than a split second possible chance.' (Selinsky v. Olson, supra, 38 Cal.2d 102, 106 [237 P.2d 645].) 'Whether the doctrine of last clear chance is applicable depends entirely upon the existence or nonexistence of the elements necessary to bring it into operation, and whether such elements exist or do not exist is ordinarily a question of fact to be determined by the fact-finder.' (Bailey v. Wilson, 16 Cal.App.2d 645, 647 [61 P.2d 68].) Again, like the body of the law of negligence, if the question is one upon which reasonable minds might differ, it is one of fact which must be left to the jury and not one of law for the court. (See Collins v. California Street Cable R.R. Co., 91 Cal.App. 752, 755 [267 P. 731].)"
 We cannot say here that with the evidence above outlined before them the jury could not have found that the driver of the police car did have a last clear chance and that by the exercise of the care required under the provisions of section 454 of the Vehicle Code he could have avoided the collision.
 It is true that the doctrine of last clear chance is applicable here only indirectly and by analogy. The jury found against Garner who was also a defendant in this case on the basis of his negligence. Appellant here would not be liable even though the police car struck and injured respondent if the driver of the police car at the time of the collision was complying with the requirements necessary to bring the police car within the exemption provided in section 454 of the Vehicle Code. [4] But one of these requirements is that the driver of an emergency vehicle must, in addition to *241 the other requirements, drive "with due regard for the safety of all persons using the highways," even though such a person might, by his own prior negligence, have placed himself in a position of peril on the highway. [5] Certainly the driver of an emergency vehicle would not be exercising the required "due care" if, having a last clear chance to prevent an accident, he failed to take advantage of it. Failure on his part to do so would constitute negligence and liability to a third party proximately injured thereby would result. [6] "An act or failure to act below the statutory standard is negligence per se, or negligence as a matter of law. [7] And if the evidence establishes that the plaintiff's or defendant's violation of the statute or ordinance proximately caused the injury and no excuse or justification for violation is shown by the evidence, responsibility may be fixed upon the violator without other proof of failure to exercise due care." (Satterlee v. Orange Glenn School Dist., 29 Cal.2d 581, at p. 588 [177 P.2d 279]; Cavagnaro v. City of Napa, 86 Cal.App.2d 517 [195 P.2d 25]; Rogers v. City of Los Angeles, 6 Cal.App.2d 294 [44 P.2d 465]; Mastro v. City of San Diego, 17 Cal.App.2d 331 [62 P.2d 407].)
 [8] We turn now to the question of whether there was any sufficient evidence to warrant giving the instructions outlining appellant's responsibility in the event the police car was not being driven in response to an emergency call. Appellant contends that there was no evidence that it was not responding to such a call. Respondent calls attention, however, to testimony of the officers that at the time the call was received the police car was heading toward the area where the collision took place to discharge officers who were passengers. Officer Jordan testified that the police car was at approximately Haight and Ashbury Streets which was "a couple of miles" from the scene of the accident when the call came, yet the official police log indicates that the only call to the police car involved was transmitted at 4:11 p. m., the Park Station log indicated that the call was received at 4:10 p. m., Officer Fegan reported the accident happening at 4:10 p. m., and Garner's automobile clock broke at 4:10 p. m. There is enough of a conflict here that the jury, in the event they disbelieved some of the testimony, could have concluded that the police car was on its way to discharge passengers rather than on an emergency call, and that the sending of the call and the happening of the collision occurred almost simultaneously. *242
 [9] Appellant contends that there was no sufficient evidence to warrant giving the instruction recognizing issues as to whether a siren was in fact sounded as was "reasonably necessary" and whether a red light was in fact displayed. Yet all of the occupants of the Garner car testified that they heard no siren prior to the collision and the hearing of each was described as either "excellent" or "definitely good." Mrs. Garner testified that, although she was looking to her right continuously as they approached the intersection and up to the time of the accident, she observed no red light. Garner testified that, when 30 feet west of the intersection, he looked to his right but observed no red light. To similar effect the testimony of a Mrs. Abrams.
 [10] Such negative testimony has been held to be sufficient to support a finding. (Rogers v. City of Los Angeles, supra, 6 Cal.App.2d 294; Isaacs v. City & County of San Francisco, 73 Cal.App.2d 621 [167 P.2d 221]; Mastro v. City of San Diego, supra, 17 Cal.App.2d 331.)
 [11] It will be remembered that the exemption provided by section 454 of the Vehicle Code was available to appellant as an affirmative defense, and upon appellant rested the burden of proving the necessary compliance with its provisions. It will also be remembered that it is not necessary that the evidence sufficient to warrant the giving of an instruction be sufficient to support a finding. "... it may be slight and inconclusive, or opposed to the preponderance of the evidence." (See quote above from 53 Am.Jur., p. 457.)
 We therefore hold that the evidence is sufficient in each case to justify the giving of the instructions complained of. This being so, it will not be necessary to discuss the effect of the proposal by appellant of similar instructions.
 The judgment is affirmed.
 Peters, P. J., and Bray, J., concurred.
NOTES
[fn. *] *. Assigned by Chairman of Judicial Council.