[Civ. No. 24624. Second Dist., Div. Three. Mar. 2, 1961.]

ANNE VON ROUX, Appellant, v. PERSHING SQUARE GARAGE CORPORATION (a Corporation), Respondent.

John Joseph Hall for Appellant.

Schell & Delamer, Joseph F. Bender and Henry F. Walker for Respondent.

VALLÉE, J.—Appeal by plaintiff from an adverse judgment entered on a jury verdict in an action for damages for personal injuries.

The assignments of error all have to do with the giving and refusing of instructions. The first is that the court erred in instructing on contributory negligence. Defendant pleaded contributory negligence. ■■■ While a party is entitled to have his theory of the case as presented by the pleadings and substantially supported by the evidence submitted to the jury by instructions, it is of course error to instruct on any theory that is unsupported by evidence. (48 Cal.Jur.2d § 188, p. 216.)

On June 17, 1956, plaintiff parked her car in defendant's public garage. She returned to get the car about 10 p. m. She stepped on an escalator to go down to the floor on which the car was parked. Her daughter, Mrs. Stephens, was ahead

of her on the escalator. Mrs. Stephens was carrying her 10-month-old daughter and a collapsible stroller. Mrs. Stephens' 7-year-old son was about 5 feet ahead of his mother on the escalator. There was no one behind plaintiff.

Mrs. Stephens, wearing heels 2½ inches high, stepped or walked off a step-off plate at the bottom of the escalator in a normal manner. The escalator did not make any sudden jump or movement.

Plaintiff testified she stepped on the step-off plate, slipped, and fell; that before she did so she looked down and "noticed there was a lot of dirt on each side" of the plate, an "accumulation"; it "was awful greasy" when she slipped; "[i]t seemed like it was grease"; "[t]he center was real slippery looking, shiny; and on both sides it was dirt, lot of dirt." Plaintiff testified that when she stepped on the plate and fell she called to her daughter for help; she was not injured when she fell; she was trying to get up; her feet kept slipping; she could not get to her feet because her feet were slipping; she was injured when the steps "kicked" her back "when they were moving."

Later that night at the hospital plaintiff told two police officers that as "she was descending on the escalator and that as she, just before reaching the bottom she suddenly fell; her feet slipped out from under her," and that she was about four steps from the bottom when she slipped; that "she didn't know what caused her to fall"; she had no explanation for the accident; she "didn't know what happened." At the hospital plaintiff was alert and well oriented and understood the officers' questions.

Mrs. Stephens testified that when she was putting her daughter in the stroller, her mother called "Help me"; she turned around and her mother "was laying on the escalator trying to get up; and her feet kept slipping out from under her"; her mother started screaming; "When I first seen mother had slipped or was laying on the stairs, I looked for a button because I observed those in a lot of department stores, you know, emergency stop, and there was none. It was just a keyhole. And then I tried to pick her up, but I couldn't because she couldn't support herself"; the step-off plate "looked like a lot of people had walked over it, and I don't know if you call it grease or dirt, but it looked slippery"; an officer came running; she and the officer lifted her mother up.

Officer Odom arrived at the scene about 15 or 20 minutes

after the accident. As part of his investigation he inspected the escalator and the step-off plate. He rode the escalator three or four times; he looked at all the steps; he "did not notice anything wrong or dirt or debris"; he did not notice any grease on the escalator or on the step-off plate.

Gerald McKennett, a service cashier at the garage, testified: Men from Marts Detective Bureau "patrol the area around the garage"; he arrived "on the scene after hearing shouts and yelling"; plaintiff was standing at the bottom of the escalator; he inspected the escalator, going up the ascending side and going down the descending side; there was no debris or foreign substance on the descending escalator or on the step-off plate at the bottom.

Howard Marts of Marts detective agency testified: There was a stop-button and a keyhole—the former for stopping the escalator, the latter to start it. Gary Shipman, a service cashier, testified: A very thin paper gummed on the back had been wetted and placed over the stop-button; the purpose was to keep pranksters and teenagers from stopping the escalator; the paper did not work; it did not keep people from turning "it off anyway." Eldridge Gardner, a Marts guard, testified: On the day of the accident he did not notice any debris of any nature on the step-off plate of the escalator. Vernon Rose, defendant's foreman, testified: He went to the scene of the accident soon after it happened; he "was handling the accident"; plaintiff said she slipped; he inspected the step-off plate; he stepped and walked on it; there was no dirt or other debris on it; it was clean; from the time of the accident no one had wiped or washed it off.

*Sunseri* v. *Dime Taxi Corp.*, 57 Cal.App.2d 926, says (p. 934) [135 P.2d 654]: "Plaintiff contends that it should be concluded as a matter of law, against the verdict of the jury, that . . . plaintiff was not guilty of contributory negligence. To make that conclusion the evidence must be such that there is no substantial conflict as to the facts, and from the facts reasonable persons can draw only the inference that . . . plaintiff was not contributively negligent. (*Crawford* v. *Southern Pacific Co., supra,* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)"

"In considering the testimony with a view to determining whether, as a matter of law, there was sufficient evidence to justify the court in giving the instructions complained of, this testimony must be considered in a light most favorable to respondent, for in order to find that the giving

of any certain instruction was not warranted by the evidence, the court must find that, as a matter of law, there is in the record not even slight or inconclusive evidence on the point covered by the instruction. In 24 California Jurisprudence, page 832, the rule is stated as follows: 'In order to warrant the giving of an instruction it is not necessary that the evidence upon an issue be clear and convincing, it being sufficient if there be slight or, at least, some evidence upon the issue. . . .' And in 53 American Jurisprudence, page 457: 'In determining whether there is evidence that will warrant an instruction, the court does not pass on the weight and sufficiency of the evidence. It is not error to submit an instruction covering a theory advanced by a party if there is any evidence on which to base it, although it may be slight and inconclusive, or opposed to the preponderance of the evidence.' Numerous cases are cited in these volumes in support of the rule as stated. (See also *Brandes* v. *Rucker-Fuller Desk Co.*, 102 Cal.App. 221 [282 P. 1009]; and *Lowe* v. *Lee*, 95 Cal.App.2d 685 [213 P.2d 767].)'' (*Washington* v. *City & County of San Francisco*, 123 Cal.App.2d 235, 238 [266 P.2d 828]. Also see *MacLean* v. *City & County of San Francisco*, 151 Cal.App.2d 133, 138 [311 P.2d 158]; *Maynard* v. *Walker*, 175 Cal.App.2d 145, 148 [345 P.2d 478].)

The evidence we have recited would support jury findings that plaintiff was contributively negligent. Mrs. Stephens did not fall on the step-off plate although she was carrying an infant and a stroller and although she was wearing heels about the size of a dime 2½ inches high. If the jury found the step-off plate was clean and that plaintiff fell on it, they could have found that plaintiff was not exercising ordinary care as she stepped off the escalator. There was much evidence there was no dirt or grease on the plate, and that it was clean. The jury also could have found plaintiff did not slip and fall on the plate but she fell, as she told the police, about four steps from the bottom of the escalator, and ''didn't know what happened.'' From that fact the jury could conclude reasonably that plaintiff was not exercising ordinary care as the escalator descended. The court did not err in instructing on contributory negligence.

It is asserted the court erred in giving this instruction on its own motion:

''With respect to any alleged dangerous or defective condition of the grille or step-off plate at the bottom of the escalator, as distinguished from the stop button, the defend-

ant may not be held liable for any injuries alleged to have been sustained by plaintiff and proximately resulting therefrom unless plaintiff proves one of the following:

"(1) That the accident was proximately caused by a dangerous or defective condition created by the defendant, its agents or employees; or

"(2) That the accident was proximately caused by a dangerous or defective condition which was actually known to defendant, its agents or employees; or

"(3) That the accident was proximately caused by a dangerous or defective condition which had existed for such a length of time that if defendant, its agents or employees had exercised the highest degree of care, it could and would have discovered it before the injury in sufficient time to remedy such condition."

It is said the instruction removed the condition of the stop-button from being considered by the jury as a dangerous or defective condition. The point is untenable. Immediately following the quoted instruction, the court told the jury that title 8, Industrial Relations, California Administrative Code, section 3098, required escalators to have an emergency stop-button or other type of switch, accessible to the public, conveniently located at both top and bottom landings, and that section 54.186 of the Los Angeles Municipal Code required escalators to have an emergency stop-button or other type of switch, accessible to the public, conspicuously located at both top and bottom landings. And immediately following, the court unequivocally told the jury that if it be found that a party conducted himself "in violation of a section of the California Administrative Code or of a section of the Municipal Code of the City of Los Angeles just read to you, you are instructed that *such conduct constituted negligence as a matter of law."* (Emphasis added.)

It is also argued that the instruction quoted above was based on the relationship of an occupier of land to an invitee, but that it was not specific enough. Plaintiff offered BAJI 213, 213-C, and 213-C(rev.). These *instructions* defined a business invitee and stated the duties of an inviter to a business invitee. Apparently plaintiff complains of the refusal to give those instructions. She has no ground for complaint. At her request the court instructed that at the time in question defendant was a common carrier operating an escalator on which plaintiff was a passenger for hire; that as a common carrier defendant was required by law to use the

utmost care and diligence for the safe carriage of plaintiff, to provide everything necessary for that purpose, and to exercise a reasonable degree of skill; that this responsibility imposed by law upon a carrier of passengers for hire includes the duty to provide a reasonably safe place where the passenger may board and alight from the escalator. If the instructions which plaintiff says were erroneously refused had been given, they would have conflicted with those given at her request. Further, the instructions given placed a much more onerous duty on defendant than would have been imposed by the requested, but refused, instructions. The error, if any, helped plaintiff; it did not hurt her. She has no ground for complaint.

The cause was well and fairly tried. We find no merit in any of the assignments of error.

Affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied March 30, 1961, and appellant's petition for a hearing by the Supreme Court was denied April 26, 1961.