[Civ. No. 27158. Second Dist., Div. One. July 1, 1963.]

MADELEINE GIBBONS, Plaintiff and Appellant, v. LOS ANGELES BILTMORE HOTEL COMPANY, Defendant and Respondent.

Von Herzen & Hutton and Hampton Hutton for Plaintiff and Appellant.

Veatch, Thomas, Carlson & Dorsey and Henry F. Walker for Defendant and Respondent.

LILLIE, J.—Plaintiff sued Los Angeles Biltmore Hotel Corporation for personal injuries resulting from a fall in the Biltmore Hotel. Judgment in favor of defendant was entered on a jury verdict; her motion for a new trial was denied. Plaintiff appeals from the judgment.

It is undisputed that plaintiff, a resident of Oroville, was staying at the hotel and was an invitee on defendant's premises. She was 81 years old and, according to a doctor who attended her, "somewhat obese," but she was active, had no difficulty in walking, had good eyesight, and wore walking shoes with medium heels. Around noon on December 22, 1959, plaintiff attended a luncheon in the hotel; upon leaving and as she descended the stairway from the Renaissance Room to the Galleria she fell on the bottom step and was injured.

The stairway consisted of six marble steps. It was covered with either a Wilton or Axminster carpet; the evidence is also in conflict relative to its condition. Plaintiff claims that photographs (taken more than eight months later) show the carpet to be old, loose and worn. She stated in her deposition that when she went up the stairs the carpet at the bottom

"looked loose" to her but she "couldn't be positive about that," nor did she know where it was loose. Her nephew and a friend examined the carpet several days after the accident; they testified that on the two bottom steps it was old, loose and pulled away from the riser. Plaintiff's witness Mr. Smith testified that it was worn and sleazy. On the other hand, substantial evidence established that at the time of the accident the carpet, while 11 years old, was neither worn nor loose, and was in good condition. Dr. Benbrook, called from his office in the hotel, went immediately to the plaintiff who was lying on the floor about 2½ feet from the bottom step. He testified that "She simply stated that she caught her heel and tripped." After the ambulance came he immediately walked up and down the stairs approximately three times and carefully examined the area; he found nothing and felt no looseness on any part of the carpet. His nurse, while waiting for the ambulance, also examined the stairs. She testified: "Well, they seemed to be all right to me, I couldn't see anything wrong or defective with the carpet at all." Mr. Beckett, assistant manager of the hotel, who arrived before the doctor, checked the stairs and carpet while plaintiff was still there. He testified that there were no worn parts on the carpet at all and that it was well tacked down; he tested the carpet thoroughly with his foot and there was no looseness about it on any of the steps. He made regular inspections of the carpets.

Descending the stairs there was a handrail on the right side; it has been the same for nine years and has never been changed. It was consistent with the general custom and practice and usage in Los Angeles. The rail extended down within ¾ of an inch of the nosing of the bottom tread. While it had some give in it the amount of play was only ⅛ of an inch on either side when good pressure was applied on the rail; it was firmly embedded in place, and was firm.

None of the other women who had preceded plaintiff slipped or fell, and Dr. Benbrook testified that in the eight years he had been there he had never known of anyone's falling on those stairs. There was no eyewitness to plaintiff's fall. Plaintiff did not testify at the trial but her two depositions were read into the record. She said that when she descended the stairs she held on to the rail "tight" with her right hand and kept "quite close to that (hand rail) because there were quite a few people going down those

steps''; that she felt her way with her feet. It is clear from her depositions that she was unable to and did not state what caused her to fall; she simply did not know. Asked if she caught her heel on the carpet on the step she said, ''I couldn't tell what I did, it happened so fast''; she said she could not remember catching her heel on anything as she stepped down. While once she stated she ''must have slipped'' because she fell, later when asked if ''it felt like'' she ''slipped,'' she said, ''well I can't say.'' In her first deposition she said she did not know if she put one foot on a step and brought the other foot down on the same step before continuing down; in her second, she said that that was the manner in which she descended. She further stated she held on to the rail until she came to the end and then ''went off with a push, and there was one more step to go and that is when I fell''; she started to fall when she reached the end of the rail and when she let go of it, ''the force of it threw me.'' Finally she said, ''I can't tell you exactly what happened.'' Asked if she recalled feeling any slipping sensation, she answered, ''I don't recall that''; and if her foot slipped out from under her, she said, ''I really don't know. It happened so quick. I don't remember.'' While her testimony relative to the cause of her fall is inconclusive, it is apparent from the testimony of her witnesses relative to the condition of the carpet that she claims the looseness of the carpet caused her to slip.

 Appellant contends that ''judgment in favor of the plaintiff is the only one which finds support in the evidence.'' (A.O.B., p. 28.) She has failed, however, to do more than recite the evidence favorable to her and argue the cause as though we were the judges of the weight of the evidence. ██ ██ Inasmuch as a general verdict of the jury imports findings favorable to the respondent upon all material issues (*Mitchell* v. *Kluber*, 196 Cal.App.2d 18 [16 Cal.Rptr. 292, 88 A.L.R.2d 1140]; *Elliott* v. *Rodeo Land & Water Co.*, 141 Cal.App.2d 404 [297 P.2d 129]), her contention requires her to demonstrate that there is no substantial evidence to support the verdict (*Nichols* v. *Mitchell*, 32 Cal.2d 598 [197 P.2d 550]; *Owens* v. *White Memorial Hospital*, 138 Cal.App. 2d 634 [292 P.2d 288]); she has the burden of showing not only evidence favorable to herself but all material evidence on the point. (*Murphy* v. *Hartford Acc. & Indemn. Co.*, 177 Cal.App.2d 539 [2 Cal.Rptr. 325]; *Zint* v. *Topp Industries Inc.*, 184 Cal.App.2d 240 [7 Cal.Rptr. 302].) Failure

to sustain this burden results in a waiver of the error assigned. (*Tesseyman* v. *Fisher*, 113 Cal.App.2d 404 [248 P.2d 471]; *Cooper* v. *Cooper*, 168 Cal.App.2d 326 [335 P.2d 983].)

Notwithstanding appellant's disregard of the rules, we have examined all of the evidence; viewing the same in a light most favorable to respondent and resolving all conflicts and indulging all reasonable inferences in favor of the jury verdict (*Primm* v. *Primm*, 46 Cal.2d 690 [299 P.2d 231]; *Grainger* v. *Antoyan*, 48 Cal.2d 805 [313 P.2d 848]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]), we find it more than ample to support the judgment.

The evidence raised several issues of fact for the determination of the jury—the condition of the carpet and handrail and the cause of plaintiff's fall. Appellant's testimony was inconclusive. She apparently was unable to state what caused her to fall; she either could not recall or did not know. Considerable dispute arose concerning the kind of carpet used on the stairs and its condition. Thus, it cannot be said, that as a matter of law defendant's negligence was established. (*Sunseri* v. *Dime Taxi Corp.*, 57 Cal.App.2d 926 [135 P.2d 654]; *Von Roux* v. *Pershing Square Garage Corp.*, 189 Cal. App.2d 626 [11 Cal.Rptr. 656]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].) It was for the trier of fact to evaluate the testimony of the witnesses, determine their credibility, weigh the evidence and resolve the factual conflicts. By its verdict the jury found the carpet and rail to be in good condition and not the cause of plaintiff's fall.

Appellant cites error in certain rulings on the evidence. The first relates to the testimony of Mrs. Mae Carvell, plaintiff's witness. Mrs. Carvell had attended the same luncheon; when she walked out she found plaintiff on the floor. She testified she waited with her but had no conversation with her regarding her fall for she was concerned about her injury: ". . . I didn't look at the steps. I have gone down them. I know them pretty well." Plaintiff's counsel then asked her, "Did you make any examination at that time of the steps," to which she replied: "No, I did not. I did not—they are dark when you come out of that room and you are liable not to hit all the steps with your feet." The answer was stricken on motion of defense counsel. Plaintiff's counsel continued: "Do you have any recollection now of the condition of those stairs at the time you walked down them following the luncheon?" Mrs. Carvell answered, "Not

—I haven't even looked at the steps as I go by there, but I do know that when you go down those steps ———." Defense counsel interrupted her with a motion to strike as not responsive. The motion was granted. Then she was asked if she had any recollection of the condition of the stairs on the date of the accident; she replied: "Not at that particular time. I have no recollection of the condition of the stairs at that time, the steps."

Appellant says it was error to strike the foregoing two answers; that she was deprived of Mrs. Carvell's testimony of "what conditions actually were when one emerges from the Renaissance Room and attempts to use the steps in question." (A.O.B., p. 12.) Relative to the first answer, all but "No, I did not" was properly stricken as unresponsive to the question (Code Civ. Proc., § 2056), even though no ground for the motion was specified. (*Davey* v. *Southern Pac. Co.,* 116 Cal. 325 [48 P. 117].) Nor was the second answer responsive. But we fail to see any ground for complaint for the record shows that the same question was again asked Mrs. Carvell and she answered that she had "no recollection of the condition of the stairs at that time." She was at no time prevented from testifying as to her knowledge, if any she had, of the condition of the steps, or from describing them; but the fact is, according to her own testimony, that she did not know their condition at the time of the accident for she did not then examine them.

 Complaint is made that the lower court erred in permitting "defendant's counsel to identify as Exhibit C and make use of, if not actually introduce in evidence, a purported diagram of the construction of a carpet supposed to be similar to that here involved" (A.O.B., p. 14), because the "diagram" did not purport to be a description of a Wilton loom.

Plaintiff claimed the stairway was laid with a Wilton carpet; there is evidence that it was an Axminster. Smith, plaintiff's witness, owner of a carpet business and experienced in carpet laying, testified that the type of carpeting used in the hotel was of "excellent quality"; then he was questioned about its condition, shown exhibit 25, a photograph, and asked if he could tell from it the general type of carpeting employed on the stairs. He replied that it appeared to be a "woven through the back Wilton," and "an excellent quality carpet." On cross-examination defense counsel asked him to draw on a sheet of paper a longitudinal sec-

tion of a "Wilton carpet of excellent quality such as that shown in the photograph"; he did so. Then after inquiring in detail about the manner in which a carpet is woven, defense counsel drew on the same sheet of paper a drawing, referred to by appellant as a "diagram," to illustrate "the chain," "pile," "warp," "woof," and "stuffer warp." The paper containing both drawings was marked for identification (Ex. C for identification only), but was at no time introduced or admitted into evidence or given to the jury as an exhibit. Thereafter on redirect examination plaintiff's counsel established by Smith wherein the illustration was incorrect and moved to strike "this exhibit." The court called his attention to the fact "it is not in evidence, it is merely for identification." Counsel did not then, or any time later, ask the court to instruct the jury to disregard it; in fact, he himself later referred to it in connection with his cross-examination of Patterson. Patterson looked at it and said "he didn't know what it was"; the court a second time stated: "This is not in evidence in any event." Moreover the testimony of both Smith and Patterson left no doubt that the illustration was incorrect and entitled to no weight or consideration; we assume that this was also readily apparent to the jurors who had "ordinary intelligence and good sense." (*Ballou* v. *Andrews Banking Co.,* 128 Cal. 562, 567 [619 P. 102].) We find no error or prejudice; neither did the trial judge who passed on the point when he denied plaintiff's motion for a new trial. (*Ades* v. *Brush,* 66 Cal. App.2d 436 [152 P.2d 519].)

■ Error is assigned to the admission in evidence of Exhibit F, cutting of carpet, inasmuch as there is no evidence to show from where it came. Plaintiff's witness Smith brought to court a piece of Wilton carpet (Ex. D) which came off a yacht but which he claimed was comparable in quality and construction to the carpet used on the stairs; he had testified that a Wilton carpet of this type and quality could become "sleazy" with wear. Later Eddie Helberg, the Biltmore Hotel carpet layer, testified that the Renaissance Room and stairway were covered with carpet used nowhere else in the hotel; that four months before trial (about two and a half years after the accident) the Renaissance Room was redecorated and a new carpet was laid there and on the stairs; that the old carpeting was removed and sold and that only a few pieces were retained if needed in some room. Cut from one of the pieces was exhibit F; it was received in

evidence not to show the condition of the carpet on the stairs, but to show the kind of carpet that had been used. There was evidence it was an Axminster carpet. But neither before nor after its admission did plaintiff interpose an objection. Thereafter, having shown on *voir dire* that Helberg neither had personally removed the carpet nor was present at the time, plaintiff's counsel moved to strike his testimony on the ground that it was hearsay; the motion was properly denied, it having been previously established that Helberg personally knew that the Renaissance Room and steps were the only places in the hotel having this kind of carpet. In any event the objection of "hearsay" did not properly raise the point of the limited admissibility of exhibit F (*Griffin* v. *Jacobsen,* 17 Cal.App.2d 68 [61 P.2d 350]); had plaintiff desired the receipt of the evidence to be limited she should have made this known to the lower court. (*Hatfield* v. *Levy Bros.,* 18 Cal.2d 798 [117 P.2d 841].)

▮ Appellant's second claim of error, that the lower court permitted defense counsel to improperly comment on the evidence during the trial, merits but brief discussion. Examined concerning whether the type of carpeting used on the stairs wears longer than other carpeting, and his experience with the length of life of such carpeting, Smith was asked by plaintiff's counsel, "And was that carpeting laid in a place subject to great public usage?" He answered, "Yes"; whereupon defense counsel said: "May the record show the peculiar drawn out 'Yes' that the gentleman gave, Your Honor? It would seem to me to express some doubt." The court replied: "The jury observed it. Let's go ahead Mr. Caldicott." Plaintiff's counsel continued: "Did you have any doubt in saying 'yes,' Mr. Smith?" He answered, "No, sir." We find no error here. It is not clear from the record whether Smith's "yes" was "peculiar" and "drawn out," but the court obviously relegated the interpretation of Smith's manner of answering to the jury, exactly where it belonged. Moreover it is apparent no prejudice resulted from the request and statement, for counsel's next question cleared up any adverse impression Smith may have given in his previous answer. Had plaintiff believed error had been committed, he should have voiced his objection or moved to strike counsel's remark and requested an admonition to the jury. He did none of these things nor did he assign it as misconduct. He is hardly in a position to do so now. (*Cody* v. *Vons Grocery Co.,* 189 Cal.App.2d 329

[11 Cal.Rptr. 277]; *Cope* v. *Davison*, 30 Cal.2d 193 [180 P.2d 873, 171 A.L.R. 667].)

█ Appellant's assertion that in his argument to the jury defense counsel improperly stated that plaintiff had two previous falls within a period of two years preceding the accident, is based solely upon three identical affidavits in support of her motion for new trial. The record does not include the arguments of counsel, but on its face the affidavit of plaintiff's counsel, who was aware of the purported statement at the time, reveals that he interposed no objection, made no effort to correct counsel and made no request to the court for an instruction to the jury to disregard it. Plaintiff cannot now be heard to complain. (*Hicks* v. *Ocean Shore R. Inc.*, 18 Cal.2d 773 [117 P.2d 850]; *McDaniel* v. *Dowell*, 210 Cal.App.2d 26 [26 Cal.Rptr. 140]; *Cope* v. *Davison*, 30 Cal.2d 193 [180 P.2d 873, 171 A.L.R. 667]; *State Rubbish etc. Assn.* v. *Siliznoff*, 38 Cal.2d 330 [240 P.2d 282]; *Seffert* v. *Los Angeles Transit Lines*, 56 Cal.2d 498 [364 P.2d 337]; *Aydlott* v. *Key System Transit Co.*, 104 Cal.App. 621 [286 P. 456]; *Kershaw* v. *Tilbury*, 214 Cal. 679 [8 P.2d 109]; *Causey* v. *Cornelius*, 164 Cal.App.2d 269 [330 P.2d 468]; *Gray* v. *Robinson*, 33 Cal.App.2d 177 [91 P.2d 194].)

Further, had such a statement been made and had defense counsel misquoted the evidence plaintiff's counsel could and should have corrected it in his closing argument. Moreover the court specifically instructed the jury not to consider as evidence any statement of counsel made during the trial. Nor in the absence of objection and request for an admonition to the jury can the matter be properly presented on affidavit after the trial. █ However, for the first time it was called to the attention of the lower court on the motion for new trial under section 657, subdivision 1, Code of Civil Procedure, as an "[i]rregularity in the proceedings of the . . . adverse party." But as pointed out by respondent this is not a matter of "irregularity in the proceedings" to be presented by affidavit, but one that can be called to the attention of the court at the time the incident occurs and to which objections and a request to admonish the jury may be made and a ruling thereon obtained from the court. "Irregularity in the proceedings" (§ 657, subd. 1) "is intended to refer to matters which appellant cannot fully present by exceptions taken during the progress of the trial, and which must therefore appear by affidavits." (*Gay* v. *Torrance*, 145 Cal. 144, 149 [78 P. 540]; *Woods* v. *Jensen*, 130 Cal. 200 [62

P. 473] ; *Gray* v. *Robinson,* 33 Cal.App.2d 177 [91 P.2d 194] ;
*Silcox* v. *Lang,* 78 Cal. 118 [20 P. 297].)

And without substance is appellant's claim that the
court wrongfully refused a "requested" instruction substan-
tially in the language of BAJI, 213-J (relative to duties owed
by an invitor to the invitee). But the record before us
shows neither the instruction as set up in appellant's brief
and her request for the same, nor its rejection by the court.
Before the alleged error and a refusal to give instructions
will be reviewed on appeal the record must show a proper
request for such instruction and the ruling of the trial
court in refusing to give it. (*Alexander* v. *McDonald,* 86
Cal.App.2d 670 [195 P.2d 24] ; *Kabzenell* v. *Stevens,* 168 Cal.
App.2d 370 [336 P.2d 250].) However, a review of the in-
structions given discloses that the matter of the duties owed
by an invitor to an invitee was adequately and thoroughly
covered. No party is "entitled to have the substance
of instructions given by the court repeated in different lan-
guage" (*Hayes* v. *Harry,* 183 Cal.App.2d 412, 417 [6 Cal.
Rptr. 671]) ; and instructions which are cumulative need not
be given. (*Zuckerman* v. *Underwriters at Lloyd's, London,*
42 Cal.2d 460 [267 P.2d 777] ; *Hicks* v. *Ocean Shore R.R.
Inc.,* 18 Cal.2d 773 [117 P.2d 850].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.