[Civ. No. 11939.  First Dist., Div. One.  May 25, 1942.]

EDWARD LANDEGREN, Appellant, v. ALBERTO
QUILICI, Respondent.

Joseph A. Brown for Appellant.

James A. Toner and Francis B. Perry for Respondent.

PETERS, P. J.—This appeal approaches the frivolous. It
is an appeal by plaintiff from a judgment in favor of de-
fendant entered in an action brought for damages for an
alleged assault and battery. The trial court found that it
was not true that defendant assaulted plaintiff without cause;
that it was true that plaintiff wilfully and maliciously ap-
proached defendant in a menacing and assaulting manner;
that it is true that defendant, believing himself to be in
danger of great bodily harm, defended himself against the
assault of plaintiff and used only such force as was reasonably

necessary for his protection and defense. Appellant's sole contention is that these findings are unsupported by the evidence. A reading of the transcript demonstrates that these findings find ample support in the record.

The proper rule to be applied to such an appeal was stated as follows in *Crawford* v. *Southern Pacific Co.*, 3 Cal. (2d) 427, 429 [45 P. (2d) 183]: "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Treadwell* v. *Nickel*, 194 Cal. 243 [228 Pac. 25]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157]; *Wing* v. *Kishi*, 92 Cal. App. 495 [268 Pac. 483].)"

If counsel would keep this fundamental rule in mind, and not take fruitless appeals in purely factual cases where the evidence is conflicting, they would not only save money for their clients, but save their time and the time of the appellate courts.

The facts most favorable to respondent as disclosed by the record are as follows: Appellant is a painting contractor. On November 6, 1939, he was painting a two-story building located at Buchanan and Greenwich Streets, San Francisco. On the lower floor of that building is a tavern operated by respondent, and projecting out from the building is a large electric sign advertising the tavern. While painting the exterior of the building on the day in question appellant covered the electric sign with a large cloth. When he quit work for the day he forgot to remove the cloth. Respondent discovered that his sign was covered when he turned on his lights, and attempted to remove the cloth with a long pole. In the meantime, appellant, who had started towards his home, returned and discovered respondent poking at the cloth. An argument took place, followed by a fight in which both participants were cut and bruised, and in which appellant suffered several broken ribs.

Obviously, the first question presented to the trial court

was, who started the fight—who was the aggressor? Secondly, it was required to determine whether respondent acted in self-defense, and, if so, whether he used any more force than was reasonably required under the circumstances. On these issues respondent testified that while he was trying to remove the cloth the appellant approached him from the rear and began reviling him and accusing him of destroying the cloth; that he apologized to appellant and requested that the cloth be removed; that he told appellant he did not want any trouble, but did want the cloth removed; that he then entered his tavern and went out in back. Mrs. Quilici, wife of respondent, testified that appellant then entered the tavern, pounded on the bar, and called her vile names, then left the tavern and went upstairs to the apartment of the landlady. The landlady testified that appellant came up the stairs and demanded the key to the garage where his ladders and painting equipment were stored; that appellant "was like a madman, he was furious and vicious at the time"; that when he asked for the key "he called me all kinds of insulting names and went downstairs mumbling to himself"; that he "dashed down the stairs furious as anything, and mad." When appellant got to the bottom of the stairs respondent had returned to the tavern, and seeing his wife in front of the door, went outside to talk to her. Mrs. Quilici testified that her husband asked her to come inside; that the appellant "came downstairs while he was saying that, so quick my husband says to me to go in the house, that was my place where I belonged. This painter came running down the stairs, called my husband all kinds of names and started with his fist, tried to fight my husband." Respondent testified that when appellant saw him in front of the tavern he came down the stairs and started towards him "like a wildcat"; that "the only thing I can do is push my wife inside and see what happened. I prepare myself, to the best of my knowledge what happened after that, we struggled for awhile in the middle of the street, we got in the middle of the street, Mr. Landegren went down with one hand, he wasn't down altogether, anyhow, maybe I am excited I don't know, but I try when he is down to help him up thinking everything is all over. When he is up, the worst names any man can call in front of a wife and mother, that is Mr. Landegren. Then we started again, maybe I follow him, maybe I don't, I don't remember exactly what happened, I was excited. Just about the time I got across the

street, Mr. Landegren laid one on my forehead right here, pretty hard, knocked me down. While I am down, breathing, he just stand on top of me, hit me all he can all over my body, wherever he could hit me. All I can do is hold him up with my left hand, all I can, I am down. Then I am relieved, somebody got him by the shirt in the back and pulled him up. For a second I don't even know who it was. It happened to be my wife, she saw me getting a terrible beating and she got in and got him by the shirt in back of his neck and pulled him off me. I didn't even wait to see whether he was going to beat her up or not, I was in terrible shape, bleeding hard, I can hardly breathe, I have sort of asthma, when I get excited I can't breathe so well, so I ran in my house, got fresh water, trying to stop the bleeding, see if I can inhale some breath, I don't know if I can explain.'' He also testified that he had two black eyes and a bloody nose, and was bruised all over; that the fight started on the sidewalk and continued out into the street; that when appellant got knocked down ''I helped him up, in any real American way we don't hit on the ground, but he knocked me down, kept on pounding me, until somebody came or I would be dead.'' Several witnesses testified that when appellant knocked respondent down he continued to beat him while he was lying on the ground.

This is a fair summary of the evidence produced by respondent. It is true that appellant's testimony was contrary thereto, and that he testified to a brutal and unprovoked assault by respondent. This conflict was for the trial court. From the above evidence the trial court was entitled to find, as it did, that appellant was the aggressor throughout; that he provoked the fight, and that respondent acted in self-defense, using no greater force than the occasion warranted. The findings being supported by competent, material and substantial evidence, this court has no power to disturb the judgment based thereon.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.