[Civ. No. 21006. Second Dist., Div. Three. May 10, 1956.]

M. NORTON ELLIOTT et al., Appellants, v. RODEO LAND AND WATER COMPANY (a Corporation) et al., Respondents.

Teschke, Rohe & Cramer, Philip Cramer and Robert A. Rohe for Appellants.

Belcher, Kearney & Fargo, John E. McCall and James C. R. McCall for Respondents.

SHINN, P. J.—The complaint in this action contained three cause of action. The following facts were alleged in the first cause of action. From about the year 1929 until on or about the 12th day of October, 1950, Rodeo Land and Water Company (Rodeo) owned Lots 34 and 40 of tract 13101 in Los Angeles County, on which latter date it sold Lot 40 to plaintiffs, and on or about June 18, 1951, sold Lot 34 to John K. Keefe and Dorothy I. Keefe; lot 34 is on a hillside with a slope of approximately 60 degrees and Lot 40 adjoins and lies below Lot 34; between 1947 and 1951, in leveling the upper portion of lot 34, Rodeo deposited on the hillside and in a small gully extending down through Lot 34 many tons of earth and that Rodeo failed to provide any retaining walls or bulkheads or other means to prevent the sliding of the loose earth in periods of rainfall; that from and after October 12, 1950, Rodeo knew or should have known that the condition created an unreasonable risk and hazard of injury to Lot 40 but took no steps to prevent such an occurrence. Plaintiffs constructed on Lot 40 a residence and other improvements at large cost; that when the Keefes bought Lot 34 they were informed by Rodeo that the lot contained said fill and the Keefes knew or should have known that the condition constituted an unreasonable risk and hazard of injury to plaintiffs' improvements on Lot 40 but that the Keefes negligently failed to provide retaining walls or take

other measures to prevent the sliding of earth from Lot 34 onto Lot 40; that on or about January 17, 1952, the rainfall upon Lot 34 and contiguous land caused large quantities of earth to move from Lot 34 over and upon Lot 40; that said sliding of earth was the direct and proximate result of the failure of Rodeo and the Keefes to take measures for the protection of plaintiffs' property therefrom; injury resulted to plaintiffs' residence, other improvements and the contents thereof, resulting in damages to plaintiffs in the amount of $78,714 and that the premises were rendered uninhabitable to plaintiffs' damage in the further sum of $6,000. It was alleged in the first cause of action that the failure of Rodeo and the Keefes to take measures to prevent the sliding of earth was negligent and in wanton and reckless disregard of consequences.

The second cause of action repeated the allegations of the first cause of action omitting the words "negligently and carelessly" but alleging, nevertheless, that the conditions created by Rodeo and maintained by Rodeo and the Keefes constituted an ultrahazardous risk to plaintiffs' property, which fact was well known to defendants.

The third cause of action repeated the first except that the allegations of damage were omitted. It was alleged that there remained a fill which constituted an unreasonable risk and hazard to plaintiffs' property; that on Janaury 20, 1952, plaintiffs had notified defendants Keefe of that fact and demanded that the condition be remedied but that it had not been remedied; that said condition has deprived and will continue to deprive plaintiffs of the use of their property; that the condition could be abated; that plaintiffs have suffered and will continue to suffer damage at the rate of $500 per month from January 17, 1952, until the condition is abated; that if it is not abated plaintiffs will suffer additional damage in the sum of $50,000 through depreciation of the market value of their property.

Rodeo and the Keefes demurred separately to the complaint. The demurrer of Rodeo was overruled as to the first cause of action and sustained without leave to amend as to the second and third causes of action. On motion of plaintiffs the order was modified and plaintiffs were granted leave to amend the third cause of action. The demurrer of the Keefes was sustained as to the second cause of action without leave to amend.

Plaintiffs filed an amended complaint containing three causes of action; it repeated the allegations of the first cause of action of the original complaint; as a second cause of action it repeated the allegations of the first cause of action with the exception of the allegations of damage to the lot and improvements and for loss of use. It alleged that there still remained on Lot 34 tons of loose earth which Rodeo and the Keefes knew or should know constituted an ultra-hazardous risk of injury to plaintiffs' property and that the dangerous condition could be abated. The third cause of action repeated the allegations of the second cause of action with the exception of the allegation that the condition could be abated. It was alleged that the condition could not be abated and that plaintiffs have suffered and will continue to suffer damage of $500 per month for loss of use of the property and temporary decrease in the market value thereof; that plaintiffs will continue to suffer irreparable injury, if the condition is not abated, through decrease in the market value of their property to the extent of $50,000. Plaintiffs sought judgment (1) for damages in the sum of $84,714; (2) a decree adjudging that the condition described constituted an unreasonable risk of injury to plaintiffs; (3) damages of $500 per month from January 17, 1952, for decrease in the market value of their property; (4) for a decree requiring the Keefes to abate the condition and awarding plaintiffs $500 per month from Rodeo and the Keefes while the condition continues; if it is decreed that the condition cannot be abated, plaintiffs have judgment against all defendants for $50,000 for permanent reduction in the market value of their property. Defendants answered. Rodeo admitted that in the year 1949 it caused to be deposited a very small amount of earth while grading a portion of Lot 34. It is sufficient to state of the answer that it denied the existence of loose earth on Lot 34 at the time of the slide and denied that any hazardous or unsafe condition existed thereon. The answer of the Keefes contained the same denials. It was admitted that a slide of earth occurred but both answers not only denied that the slide was caused by any act or omission upon the part of defendants or either of them, but alleged as special defenses to each cause of action of the complaint that plaintiffs took possession of Lot 40, altered the contour thereof in a substantial manner, graded and excavated substantial portions of the lot, removed the toe of the slope. depriving it of natural support, and changed a natural water course thereon;

that the work was negligently performed and that as a direct and proximate result the soil was caused to descend upon said Lot 40; that in making the excavation the plaintiffs had full knowledge of the natural contour of Lot 40 and the property immediately above the same and voluntarily assumed whatever risk was involved in such alteration and excavation.

The issues framed by the first and third causes of action which sought damages, and the answers thereto, were submitted to a jury and the verdict was in favor of the defendants. The issues tendered by the second cause of action, which sought injunctive relief or in the alternative, damages, and the answers thereto, were tried to the court. The court made findings and conclusions, following which judgment was entered in favor of defendants. Plaintiffs appeal from the judgment and from an order to be mentioned later.

The court found that Lots 34 and 40 were owned by the various parties at the several times alleged in the complaint. It was found that on or about January 18, 1952, during a heavy rainfall a large section of earth with trees and shrubbery slid down the steep hillside of Lot 34 over and upon Lot 40. The court made the following finding: "IX. It is true that Plaintiffs graded and excavated Lot 40 on which they constructed a residence in such a careless and negligent manner that it deprived Lot 34 of its natural support and said negligent grading and excavation was the proximate cause of the landslide and damage complained of in Plaintiffs' First Amended Complaint embraced in plaintiffs' second count in their amended complaint relating to injunctive relief." It was further found that the allegations of the separate defenses, namely, those accusing plaintiffs of having negligently excavated upon Lot 40 in such manner as to cause the slide were true, and it was further found that plaintiffs with full knowledge of the conditions assumed whatever risk was involved in making the excavation. It was further found to be untrue that the presence of the remaining fill has caused or will cause harm and injury to plaintiffs or deprive them of the use of their property and untrue that because of the existence of the remaining fill plaintiffs have been damaged by reason of depreciation of the market value of their property or through loss of use of the same; that it was not true that between 1947 and 1951 (as alleged in the complaint) Rodeo deposited many tons of fill on Lot 34 in an unprotected and loose state without reinforcing or compacting the fill and without providing measures to prevent the fill from sliding.

It was found that neither Rodeo nor defendants Keefe had been negligent in any respect and that plaintiffs suffered no injury or damage as a result of any negligence on the part of defendants or either of them; there was no finding as to the extent of plaintiffs' damage. The conclusions of law were that plaintiffs' damages were not due to any negligent act or omission of the defendants proximately contributing to or causing said damages and that said damages did not afford a basis for the granting of injunctive relief; that the damages that plaintiffs sustained were due directly and proximately to an unavoidable and inevitable occurrence or accident, insofar as the defendants were concerned, and that the damages the plaintiffs sustained were due directly and proximately to their own acts of negligence contributing thereto, and causing the said damage.

The findings that defendants were not guilty of negligence consisted of findings that the allegations of certain paragraphs of the several causes of action of the complaint were untrue and the same may be said of the finding that the conditions presently existing on Lot 34 do not constitute an unreasonable threat or hazard to the safety of plaintiffs' property or depreciate its market value or deprive plaintiffs of the use thereof. There was no finding that the remaining fill does not create a dangerous condition but only a finding that there exists no condition which depreciates the value or the usefulness of plaintiffs' property. The employment of the shiftless method of preparing findings by reference to paragraphs of the pleadings, declaring to be untrue allegations that are stated in the conjunctive, and are qualified by being made dependent upon a superfluity of descriptive adjectives, has resulted in a set of findings that have been confusing and tedious to analyze. However, when all the findings are read together, including those that may be properly inferred, the following facts were established thereby: that the fill did not create a dangerous condition; it was not negligently created by Rodeo and was not negligently maintained by Rodeo or defendants Keefe through the omission of said defendants to take effective measures to prevent a slide of the fill; also the direct and proximate cause of the slide was the negligent removal of the toe of the slope by plaintiffs. All these findings must be deemed conclusive upon appeal. As to the findings to the effect that it was the excavation made by plaintiffs that caused the slide plaintiffs merely say ''plain-

tiffs contend that there was no evidence in the record to support such a finding.'' As to the other material findings they say in their reply brief: ''For Appellants to enter into lengthy disputes with Respondents regarding evidentiary matters, particularly as to the cause of the fill slide, would appear to unnecessarily take up the Court's time on appeal. . . . However, for the purposes of the appeal, it does not appear worthwhile to argue as to the facts, although the Court should realize that Appellants in no manner concede the asserted material facts set forth by Respondents which were highly contested issues in the case.''

Appellants, therefore, concede for purposes of the appeal, that the findings to which we have referred had support in the evidence. ■ The mere statement that certain findings are unsupported by the evidence without an appropriate statement of the evidence applicable thereto must be disregarded. (*Goldring* v. *Goldring*, 94 Cal.App.2d 643 [211 P.2d 342].) We have no thought that the omission of plaintiffs to set out and discuss the evidence on the material issues was an oversight or was due to a lack of familiarity with the rule. ■ Brief references to the record will demonstrate the futility of a contention that the material facts are not supported by the evidence. Some 25 years before the slide occurred Rodeo had graded the top of Lot 34 and deposited on the slope a large quantity of earth which plaintiffs designate as a ''fill.'' The earth was compacted, the slope was planted to shrubs and to pine trees which had grown to heights of as much as 25 or 30 feet; in fact the hillside was fully covered with a dense growth which would normally afford good protection against erosion. Our attention has not been called to any evidence, and we have found none, that any slide of earth had previously taken place; although not in its original condition the earth in the area was fixed and solid rather than loose and shifting as plaintiffs contend. In 1949 a very small quantity of earth was shoved onto the top of the slope but none of this was carried onto plaintiffs' property. There was evidence of engineers and other competent witnesses that there was no washing down or rolling of the earth but that a movement of an entire mass, three quarters of the way up the slope, took place and that this shift was due solely to the removal of the lateral support at the bottom resulting from plaintiffs' excavation of the toe of the slope which had previously held it in place. With respect to the court's finding that no

dangerous condition existed at the time of the trial there was evidence that after the slide the Keefes took effective measures to make sure that their property would be protected in periods of rainfall; they sowed 200 pounds of rye grass and planted 1,000 willow trees and 50 or 60 other trees on the slope. Plaintiffs also took effective measures in the rear section of their lot to take care of excessive runoff of water. In the finding that there was no presently dangerous condition on the property there was an implication that some of the deposited earth still remained on the slope, and, in fact, defendants did not contend otherwise.

The special defense that the direct and proximate cause of the slide was the negligence of the plaintiffs was applicable to each cause of action. The first and third causes of action accused the defendants of negligence. These issues were submitted to the jury and the verdict implies that both were decided in favor of the defendants. It is implicit in a general verdict that all material facts in issue as to which substantial evidence was received were determined in a manner consistent and in conformance with the verdict, or as stated in 24 California Jurisprudence, page 893, ''in favor of the prevailing party,'' listing a multitude of cases.

The findings that defendants did not create or maintain a hazardous condition, were not negligent, and that the proximate cause of the slide was the excavation of the toe of the slope on Lot 40, being supported by the evidence, are determinative of the question of liability. Plaintiffs have filed elaborate briefs which ignore or brush off as inconsequential the findings upon the essential, ultimate issues of fact. They do not attempt to show how one whose acts cause injury to his own property may recover therefor from one whose acts or omissions did not cause the injury. They advance the theory, which was the basis of the second cause of action of the original complaint, to which demurrers were sustained without leave to amend, that defendants were responsible for the slide and the results thereof even if they were not negligent in any respect. Upon this ground they argue that it was error for the court to sustain the demurrer to the second cause of action without leave to amend. The merits of this assertion of defendants' liability without negli-of the court and the implied findings of the jury that it was gence would be presented were it not for the express findings the acts of the plaintiffs themselves and not those of the defendants that caused the slide. These findings, given an

interpretation consistent with the verdict and judgment, mean that had it not been for the excavation made by plaintiffs the slide would not have occurred. This, of itself, is a sufficient answer to any claims of liability of the defendants.

There is another assignment of error which should be noticed. At the request of Rodeo the court instructed as follows: "If you should find from the evidence that any acts or omissions of the plaintiffs, either removal of soil or altering of drainage or otherwise, was a cause of injury to the plaintiffs, the plaintiffs may not recover against the defendant, Rodeo Land & Water Co., or the Keefes, regardless of all other considerations in the case" and, further: "If the damage to the plaintiffs' property was caused by some agency beyond the control of Rodeo Land & Water Co., or the Keefes or if it was caused by some act of the plaintiffs themselves, the plaintiffs may not recover in this action against Rodeo Land & Water Co., or the Keefes and your verdict must be in favor of the innocent party." These instructions are criticized for the reason that they would permit the jury to find that some acts or omissions of plaintiffs were the cause of the sliding of earth even though they were not negligent and also because the instructions omitted the element of proximate cause. We do not find any merit in the first criticism. The only evidence to which the instructions could have related was that descriptive of the result of plaintiffs' grading and excavating upon Lot 40, which deprived Lot 34, of its natural support. Although defendants alleged that plaintiffs' acts were negligently performed it does not follow that if the grading and excavation were done without negligence, and yet caused the slide, plaintiffs could escape responsibility. Having created a condition which caused the earth to slide plaintiffs brought about that result and they could not, by proving that their work was carefully done, shift responsibility to the defendants. Responsibility attached for what they did and not for the manner in which it was done.

Plaintiffs, in their endeavor to fasten liability upon defendants, invoke the rule stated in *Green* v. *General Petroleum Corp.*, 205 Cal. 328, 334 [270 P. 952, 60 A.L.R. 475], as follows: "It ought to be, and we are of the view that it is the rule that, where an injury arises out of, or is caused directly and proximately by the contemplated act or thing in question, without the interposition of any external or independent agency which was not or could not be foreseen, there is an absolute liability for the consequential damage,

regardless of any element of negligence either in the doing of the act or in the construction, use or maintenance of the object or instrumentality that may have caused the injury.'' Several other cases which applied the rule are listed in plaintiffs' briefs. We need only point out the applicability of the rule to the present case. ■ There can be no doubt that if one removes a part of his land so as to take away necessary lateral support for his neighbor's land, and it caves in, he cannot justify his act by proof that he had no reason to expect that occurrence, and hence was not guilty of negligence. ■ The second criticism, as to the omission of the element of proximate cause, is valid but the error was not prejudicial. Since the jury impliedly found that defendants were not negligent in any respect, and also impliedly found that it was the grading and excavation that caused the slide, it would necessarily follow that that work was the proximate cause of the occurrence, just as certainly as pulling a chair from under one about to be seated in it would be the proximate cause of the immediate consequences.

There were other instructions which correctly stated the rules of negligence and proximate cause, although plaintiffs do not mention them. We are convinced that the jury was not misled by the instructions that are criticized.

Appellants criticize the findings and conclusions of the court in many respects and also complain of numerous alleged errors. We have considered all their contentions and have found them to be unsubstantial and far removed from the decisive issues in the case. There is no merit in the appeal. Upon the findings of the court and the implied findings of the jury, which stand unchallenged, plaintiffs can have no valid claim for redress. Only a clear showing that plaintiffs were deprived of a fair trial would justify a reversal of the judgment. That has always been the rule in California and no court has ever spoken to the contrary. Plaintiffs were afforded a fair trial and the judgment is a just one.

We may add that we have not overlooked the contention of Rodeo that it committed no wrong when it graded Lot 34 at a time when it owned both lots and that it could have had no liability thereafter to purchasers of the lots in the absence of a warranty or misrepresentation or concealment as to the conditions. (See *Daniels* v. *McPhail*, 93 Cal.App.2d 479 [209 P.2d 19].) It is unnecessary to consider the merits of this defense, or of other contentions of the defendants.

The verdict was rendered September 20, 1954; judgment on

the verdict was entered October 14, 1954; Rodeo's cost bill was filed five days later. Plaintiffs moved to strike the cost bill on the ground it was not filed within five days after the verdict. (Code Civ. Proc., § 1033.)[1] The motion was denied and plaintiffs assign error.

Plaintiffs' theory is that the case was ended, as to Rodeo, when the verdict was returned, that it was not concerned with the court trial and that its bill for costs of defending on the first and third causes of action was due within five days after the verdict. But plaintiffs were seeking damages from Rodeo on the second cause of action and the action was not terminated until the judgment was entered. ▇ We think it is not required that a cost bill be filed before the trial is ended when there are issues tried to a jury and others to the court. ▇ The action was tried in part "without a jury" and this was sufficient to bring it within the class of cases in which the time runs from the notice of entry of the judgment. Such was the holding in *Whiting* v. *Squeglia*, 70 Cal.App. 108 [232 P. 986], where there was a verdict upon special issues adopted by the court and findings on other issues by the court. To the same effect is *Estate of Weber*, 113 Cal.App.2d 160, 174 [247 P.2d 939]. The same rule should be applied where the verdict is upon one or more causes of action tried to a jury and others remain to be determined by the court before the trial is ended. A reasonable interpretation of section 1033 would be that only one cost bill need be filed. There was no error in denying the motion.

Before closing our opinion we will revert to the matter of the findings and repeat some observations we have made in other cases. (*Freeman* v. *Jergins*, 125 Cal.App.2d 536, 563 [271 P.2d 210].) The facts which were determinative of the rights of the parties were the following: some 25 years before the slide occurred Rodeo deposited large quantities of loose earth on the slope of Lot 34 and compacted the same, planted shrubs and trees, which developed a thick growth of verdure and the earth was made settled and firm and safe from erosion and from sliding in periods of rainfall;

---

[1] "In Superior Courts . . . the party in whose favor the judgment is ordered, and who claims his costs, must serve the adverse party, and file at any time after the verdict or decision of the court, and not later than five (5) days after the verdict, or, if the action is tried without a jury, not later than five (5) days after notice of the entry of the judgment, a memorandum of the items of his costs and necessary disbursements in the action or proceeding . . ." (As it read at the time.)

plaintiffs graded Lot 40 and made an excavation which removed the toe of the slope and thereby deprived the slope of necessary lateral support and that the same was the immediate and sole cause of the sliding of the earth and of the condition resulting therefrom.

The first six findings were that plaintiffs are husband and wife, the Keefes are husband and wife, that all are residents of Los Angeles County; Rodeo is a corporation, it owned the lots and sold them to plaintiffs and the Keefes. These were admitted facts. A tiresome study of the findings, consisting of references to the pleadings, discloses that the court made findings as follows: Rodeo did not deposit a large quantity of earth on the slope (which was contrary to the fact); Rodeo did construct bulkheads and retaining walls and drains for falling water (which it did not do); the Keefes did compact the earth on the slope and construct retaining walls and bulkheads (which they did not do); that it was not true that Rodeo informed the Keefes that Lot 34 contained filled grounds (the admitted fact being that Rodeo did so inform them). Ambiguities in the findings of the untruth of allegations in the conjunctive are too numerous to mention. From our experience we have learned that such anomalies in findings should be overlooked as long as counsel fail to understand that findings should be made of the ultimate, determinative facts of the case and that all else should be omitted. It is frequently the case where the findings merely state that the allegations of certain paragraphs of certain pleadings are true or untrue, that upon analysis of those allegations it will be discovered that the findings have spoken untruths. The adoption of that method of finding the facts of the case has resulted in no improvement in this most important step in trial procedure. If the facts had been found simply and directly, as we have stated them, and the briefs had been confined to a discussion of those facts and the evidence pertaining thereto, the appeal would have been simplified for the attorneys and the court. As it is we have been presented with 183 pages of briefs, not a tenth part of which has any relevancy to the merits of the appeal.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied June 7, 1956, and appellants' petition for a hearing by the Supreme Court was denied July 5, 1956.