[Civ. No. 23187.   Second Dist., Div. One.   June 2, 1959.]

VIRGINIA H. COOROUGH, Appellant, v. ALICE DeLAY et al., Respondents.

42

Joseph H. Bradley and William H. Neblett for Appellant.

Veatch, Thomas & Carlson and Henry F. Walker for Respondents.

LILLIE, J.—On June 3, 1956, plaintiff suffered personal injuries in the course of being ejected by defendant, Alice DeLay, a cocktail waitress, from a barroom owned and oper-

ated by defendant Vince Dundee, Jr., in the city of Glendale. Compensatory and punitive damages were sought for the alleged assault and battery, and the jury returned a general verdict in favor of both defendants. Plaintiff's motion for a new trial was denied. On this appeal from the judgment entered on the jury verdict, plaintiff challenges the sufficiency of the evidence as a matter of law to sustain the jury's implied finding that reasonable force was used to accomplish her expulsion from the premises; and claims reversible error in the giving and refusal of certain instructions.

As is our duty, we recount the evidence in the light most favorable to the respondents and indulge all intendments and reasonable inferences which favor the sustaining of the trier of fact (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]). Such evidence discloses that between 10:15 and 10:30 on the evening of June 2, 1956, appellant, unescorted, entered Vince Dundee's Café and took a seat at the bar. Immediately prior to her appearance there, she had spent more than an hour at a nearby drinking establishment where, with certain friends, she admitted consuming three whiskey highballs. At Dundee's according to her testimony, appellant had two more drinks (the last only partly consumed); whether influenced by the environment or the liquid refreshment, or both, she proceeded during the course of the evening to do several impromptu solo dances near the piano and tables occupied by other patrons. Her attire at this time requires comment: she wore tight-fitting pants, variously described by witnesses as "toreadors," "capri slacks," and "pedal pushers," and a black short-sleeved blouse. Also requiring comment is the description given these solo dances by several witnesses: "obscene," "pretty filthy," "lewd," and "a cheap imitation of a low-down carnival hoochie-coochie."

The attention of respondent DeLay to appellant's activities was first directed by a woman patron seated at a table, who objected to appellant "doing this obscene dance in front of her husband." DeLay then asked appellant to return to her seat at the bar and stop dancing, but appellant refused.

One witness stated that appellant did some "swinging" at DeLay, but he could not recall if the latter was struck. A short time later appellant approached the table occupied by this witness and his wife. She stopped, turned her back to the couple and proceeded to "gyrate again" about six inches from the man's face. As respondent DeLay was approaching

with a tray of drinks appellant attempted to strike her, whereupon a male patron led her back to her seat at the bar. One the way she stopped him and exclaimed: "Let me at that bitch." He and his wife then left the premises.

A few minutes later, appellant repeated her impromptu performance at the table of the first woman patron who then demanded that appellant "get away" or she would "throw her out." She made this same demand to respondent DeLay, telling her that if she "didn't do something about it, she would."

At this juncture, as often happens, the evidence is in sharp conflict. Appellant states that DeLay applied a hammer lock, forced her to the landing platform at the entrance, slashed her right arm with some metal instrument and then knocked her down the three or four steps leading to the sidewalk. Denying that she twisted appellant's arm, DeLay testified that she escorted appellant to the door, where appellant slapped her and again refused to leave; that thereupon she "let her right out the door and pulled the door shut and went about my (her) business," adding that as she returned to her work she saw appellant through the glass door and the latter was standing up—swearing and screaming. More disinterested witnesses testified to some hair pulling and scuffling within the room; none however could corroborate appellant's claims concerning the incident on the landing platform.

About 20 minutes later, DeLay next saw appellant seated at a table in the alcove of the barroom. She had returned, she testified, to ascertain the reason for her removal from the premises. Neither had spoken to the other when the café closed at 2 a.m.

Respondent Dundee, DeLay's employer, was not present at any time on the evening in question. His liability for compensatory damages was sought on the basis of *respondeat superior*; and the claim against him for punitive damages stemmed from his retention of DeLay in his service as a cocktail waitress, assertedly being a ratification of her acts.

Although conceding it to be "Hornbook law that a person may use reasonable and necessary force to protect his person and property," appellant nevertheless argues that the force here used was such that a reasonable person would not have exercised under the circumstances. She urges that DeLay had only to call the manager or bartender to accomplish this mission or should have resorted to peaceable persuasion

coupled with the patience expected of people in the business of dispensing refreshments which cause some of their invitees to lose their inhibitions. Attention is also directed to the fact that appellant was bruised and battered, whereas DeLay escaped unscathed; this in itself, appellant contends, would indicate that an unnecessary amount of force was used. She cites such cases as *Griswold* v. *Hollywood Turf Club,* 106 Cal.App.2d 578 [235 P.2d 656]; *Haworth* v. *Elliott,* 67 Cal. App.2d 77 [153 P.2d 804] and *Tomblinson* v. *Nobile,* 103 Cal. App.2d 266 [229 P.2d 97], all of which hold that actions of this type are secure from appellate interference where there is substantial evidence that unreasonable force was used on the invitee. The cases cited, however, are factually dissimilar, either because the conflict in testimony related to immaterial details (*Griswold* v. *Hollywood Turf Club*) or because there was no room for argument about the use of such force.

▮ As heretofore noted, the jury's verdict was general in character. Implicit in such verdicts is the presumption that ''all material facts in issue as to which substantial evidence was received were determined in a manner consistent and in conformance with the verdict.'' (*Elliott* v. *Rodeo Land & Water Co.,* 141 Cal.App.2d 404, 411 [297 P.2d 129].) ▮ Since both respondents affirmatively pleaded provocation by appellant and the use of reasonable force to remove her from the café, we must assume that the jury impliedly upheld their claims on those issues. ▮ Furthermore, it is well settled that the trier of fact must determine from the circumstances of each case whether more than reasonable force was used (*Landegren* v. *Quilici,* 52 Cal.App.2d 213, 216 [126 P.2d 141]; *Haeussler* v. *De Loretto,* 109 Cal.App.2d 363, 364 [240 P.2d 654]; *See* v. *Grandview Gardens,* 136 Cal.App.2d 618, 619 [289 P.2d 48].) ▮ Where the evidence is in conflict, it is not the province of a reviewing court to analyze or resolve those conflicts. (*See* v. *Grandview Gardens, supra,* 619.)

▮ In the light of the foregoing rules, we are not persuaded that the jury's determination is without substantial support. The proper operation of places of public accommodation requires the maintenance of peace and good order upon the premises—this principle, we need hardly add, is particularly applicable to barrooms or places where intoxicants are served. Too, a legal duty is owed by their proprietors to protect business invitees from the acts of third persons,

and this duty includes "the taking (of) appropriate measures to restrain conduct by (such) third persons which he should be aware of and which he should realize is dangerous" (*Edwards* v. *Hollywood Canteen*, 27 Cal.2d 802, 810 [167 P.2d 729]).

The power of control would be completely anemic without the power of expulsion lawfully accomplished; furthermore, no valid distinction can logically be made between acts which may cause physical harm and those which affront the proprieties. It has been declared that the proprietor of a public tavern may not eject a member of the public of lawful age as long as he is acting "properly" or "except for good cause" (*Stoumen* v. *Reilly*, 37 Cal.2d 713, 716 [234 P.2d 969]). One or more of the women patrons present testified that appellant's behavior was "personally offensive"; without narration of further details, no other reaction would seem possible, since it is not suggested that the café in question was one frequented by persons of questionable morals and tastes.

In view of our conclusion that there is no lack of evidentiary support for the jury's implied finding, we give but brief attention to appellant's additional claim that DeLay must have been acting within the scope of her employment and that her acts were imputable to her employer. She relies on *Hiroshima* v. *Pacific Gas & Electric Co.*, 18 Cal.App.2d 24 [63 P.2d 340]; *Perry* v. *Washington National Ins. Co.*, 14 Cal.App.2d 609 [58 P.2d 701, 59 P.2d 158]; *Andrews* v. *Seidner*, 49 Cal.App.2d 427 [121 P.2d 863], and cases from other jurisdictions for the general proposition that a master is liable for the wilful and malicious acts of his servant when the latter makes an assault upon a third person as a result of a quarrel which immediately grew out of the performance of his duties. But the insurmountable difficulty with appellant's argument lies in the fact that in the matter here under consideration the jury impliedly found that no assault was committed, thus rendering academic any discussion of the refinements which are said to control.

It is next urged that the trial court committed errors of law prejudicial to appellant in the giving and refusal to give certain instructions. In that regard, it is first asserted that the court erred in declining to instruct that as a matter of law the conduct of DeLay was to be deemed to have been the conduct of Dundee, her employer. We must again point out that the jury's verdict being general in form or character, it impliedly found that no unreasonable force was used by

DeLay; accordingly, there was nothing in such conduct which, if imputed to Dundee, could have rendered him liable therefor. In *De La Torre* v. *Johnson,* 203 Cal. 374 [264 P. 485], the trial court directed a verdict in favor of Johnson, the defendant employer, and the jury, of its own accord, found in favor of defendant Smith, the employee. The Supreme Court concluded that the verdict as to Smith had substantial support and declared in the closing paragraph of its opinion (p. 379): "These views render it unnecessary to pass upon the propriety of directing a verdict in favor of the deceased defendant, W. P. Johnson, for his alleged liability is predicated solely upon the doctrine of *respondeat superior.*" Similar reasoning was applied in *Stickel* v. *San Diego Elec. Ry. Co.,* 32 Cal.2d 157, 167 [195 P.2d 416]. ■ Furthermore, appellant is in no position to complain because she herself submitted an instruction (Plaintiff's Instruction No. 8), refused as covered by other instructions given, which propounded interrogatories calling for a determination by the jury as to whether (1) an assault and battery were committed on appellant's person by DeLay and (2) whether such assault and battery were within the scope of her employment by Dundee. Since the trial court gave B.A.J.I. No. 54 (contested issue as to agency) with certain modifications, the situation is akin to that in *Redfoot* v. *J. T. Jenkins Co.,* 138 Cal.App.2d 108 [291 P.2d 134], where plaintiff-appellant requested two conflicting instructions on one subject. Both were refused, but the trial court read an instruction offered by the respondent which agreed in principle with one of the two requested by appellant. ■ Quoting from *Jansen* v. *Southern Pacific Co.,* 112 Cal. App.2d 833 [247 P.2d 581], the court said (p. 845): "It is well established that 'A party cannot complain of an instruction given at his own request or of an error in an instruction given at the instance of his adversary when he requests a substantially similar one.' " We agree with respondents that the doctrine of invited error is here applicable.

Finally, appellant contends that the trial court erred to her prejudice in instructing the jury that punitive damages could not be assessed against Dundee regardless of the right to such award from DeLay. ■ Unless an employer personally participates in the wrongful acts, or previously authorized them, or subsequently ratifies the employee's acts with full knowledge of the facts, he is not liable in exemplary damages (*Deevy* v. *Tassi,* 21 Cal.2d 109, 125 [130 P.2d 389]). Here the sole question related to Dundee's ratification of

his codefendant's conduct. Respondents rely on *Edmunds* v. *Atchison etc. Ry. Co.*, 174 Cal. 246, 250 [162 P. 1038], to the effect that a prospective plaintiff should do more than merely notify the principal of his claim—he should also acquaint him with the facts and thus give the employer an opportunity to redress the wrong. The Edmunds case is cited in *McChristian* v. *Popkin*, 75 Cal.App.2d 249, 256 [171 P.2d 85], although this court there affirmed an award of punitive damages and held that appellant-employers had ample opportunity to learn of their employee's conduct and continued him in their service without making an investigation or attempting to redress the wrong. However, as in the previous point raised by appellant, extended discussion of the present problem would be purely academic. ▮ It has been settled law for many years that where a jury returns a verdict in favor of the defendant on the main issue, errors in instructions bearing solely on the amount of damages present no ground for reversal. (*Wilhelm* v. *Donegan*, 143 Cal. 50, 53-54 [76 P. 713]; *Cook* v. *Los Angeles Ry. Corp.*, 169 Cal. 113, 115 [145 P. 1013]; *Church* v. *Payne*, 36 Cal.App.2d 382, 401 [97 P.2d 819]; *De La Torre* v. *Johnson, supra,* 378.) In the present state of the record, we must assume that the instruction complained of, though possibly subject to criticism, could not have influenced a verdict which was rendered, as in this case, less than an hour after the jury commenced its deliberations.

No reversible error being manifest, the judgment is affirmed.

White, P. J., and Fourt, J., concurred.