Filed 12/5/24  P. v. Howell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Plumas)

----

| | |
|---|---|
| THE PEOPLE, | C100320 |
| Plaintiff and Respondent, | (Super. Ct. No. F2200042) |
| v. | |
| SAMUEL OLIVER HOWELL, | |
| Defendant and Appellant. | |

Appointed counsel for defendant, Samuel Oliver Howell, filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant has also filed a supplemental brief challenging the sufficiency of the evidence supporting determinations that he did not act in self-defense at various stages of the case. Finding no arguable errors that would result in a disposition more favorable to defendant, we will affirm the judgment.

1

On January 27, 2022, the People filed a criminal complaint charging defendant with assault by means likely to cause great bodily injury (Pen. Code,[1] § 245, subd. (a)(4); count I) with a great bodily injury enhancement (§ 12022.7, subd. (a)) and two counts of misdemeanor battery (§ 242; counts II & III).

*The Preliminary Hearing and Information*

The trial court held a preliminary hearing on October 14, 2022.  The People presented evidence that Anthony A. was at the bar he owns on December 8, 2021, when a disturbance broke out.  He heard something and saw defendant take three swings at Ryan B., missing each time.  Anthony A. stepped between the men, told defendant to "knock it off," and grabbed defendant.  In response, defendant grabbed Anthony A.'s shoulders and threw him, causing him to fall to the ground and lose consciousness.  Anthony A. was transported to the hospital where a CAT (computerized axial tomography) scan was performed, and he received staples to the back of his head.

Judy J. was at the bar on the night in question and witnessed a disturbance.  She first heard defendant call Ryan B. a "bad ass," and Ryan B. responded that defendant did not know him.  She then heard a scuffle and turned to see that defendant grabbed Anthony A., and she saw Anthony A. fall back into the railing of the fireplace and hit his head.  She tried to intervene, and defendant pushed her to the floor.

Emily L., who was also at the bar that night, saw defendant invading Ryan B.'s personal space.  Ryan B. told defendant to back up, but defendant kept getting closer to him, and they ended up within a foot of each other.  Ryan B. pushed defendant back, and defendant reacted by swinging his beer bottle at Ryan B. hitting him with either the bottle or his body.  Ryan B. again pushed defendant, and Anthony A. tried to intervene, but defendant pushed Anthony A., who hit his head on the fireplace.  It was a violent fall, and Emily L.

---

[1]  Subsequent undesignated statutory references are to the Penal Code.

thought Anthony A. was dead because he was stiff as a board and unconscious for 8 to 10 minutes. Various patrons tried to force defendant to leave, and in the commotion, he kicked Emily L. Defendant was violently trying to kick anyone involved. Once defendant was outside, someone locked the door. On cross-examination, Emily L. agreed defendant was hearing impaired and stands close to people as a result.

Defendant's attorney argued defendant's push of Anthony A. was not likely to result in great bodily injury, and he had acted in lawful self-defense after he was pushed by Ryan B. Nonetheless, defendant's attorney conceded there was adequate evidence to hold him over for trial on the simple batteries, but not for the assault with great bodily injury count. The trial court disagreed, finding probable cause to hold defendant to answer as charged in the complaint.

On October 27, 2022, the People filed an information charging defendant with two crimes against Anthony A: assault by means likely to cause great bodily injury (§ 245, subd. (a)(4); count I) with a great bodily injury enhancement (§ 12022.7, subd. (a)) and battery with serious bodily injury (§ 243, subd. (d); count II). The information further alleged defendant committed a misdemeanor battery (§ 242) against Judy J. (count III) and Emily L. (count IV).

### The Section 995 Motion, Jury Trial, and Sentence

Following several replacements of defendant's appointed counsel, the trial court approved defendant's request to substitute retained counsel and for a continuance of the trial so newly retained counsel could prepare. This counsel filed a motion to set aside the information for lack of evidence (§ 995) arguing the preliminary hearing evidence did not establish probable cause that defendant had used force likely to cause great bodily injury and had not acted in self-defense. The People opposed this motion, arguing the preliminary hearing transcript contained ample evidence to hold defendant over for trial. Defendant's reply brief argued his motion addressed solely a question of law so no deference to the magistrate's findings was required and that the People's witnesses established he had acted in lawful self-defense. While not reflected in the minute order on the day scheduled for

3

defendant's motion, the trial court's action of setting the matter for a trial readiness conference implicitly suggests the court's denial of this motion.

On the first day of trial, defendant filed motions in limine seeking to exclude: any evidence of injury to Anthony A. or Emily L. until the People provided substantial evidence establishing defendant had not acted in lawful self-defense and that defendant had acted with force likely to cause great bodily injury to Anthony A. Defendant further moved to exclude evidence that Anthony A. saw a fight break out, that Ryan B. asked defendant to back away, that defendant struck Ryan B. with a beer bottle, that Anthony A. did not see Ryan B. make any motions prior to defendant swinging at him, and that Anthony A. stepped in to break up "defendant's assault." Finally, defendant sought to preclude testimony that defendant pushed Judy J. to the ground. The record reflects the trial court allowed this late filing and had not reviewed the written motions, but denied the motions based upon the oral representations of what they contained.

At trial, the People presented evidence consistent with the preliminary hearing testimony. Anthony A. owned a bar in town and was at the bar on December 8, 2021. Defendant was also at the bar that night. Anthony A. saw defendant take three swings at Ryan B., who did not swing back. Anthony A. then stepped between them, telling defendant to " 'Knock it off,' " and took ahold of defendant's bicep.[2] Defendant responded by throwing him down, but Anthony A. kept ahold of him resulting in both men falling to the floor, and Anthony A. hitting his head on the wood stove. The next thing Anthony A. recalled was seeing a first responder and being transported to the emergency room by ambulance. He received three staples to close the cut on his head and had a CAT scan.

Judy J. was at the bar on December 8, 2021. She saw defendant talking to Ryan B. Defendant commented that Ryan B. was a "badass," and Ryan B. responded that defendant did not know him. Judy J. stopped paying attention, did not see how the fight started, and

_____

[2] Anthony A. denied trying to hit or shove defendant, testifying he only tried "to grab ahold of him."

4

next noticed defendant pushing Anthony A. down toward the fireplace. Defendant looked angry. Judy J. tried to intervene by grabbing defendant's arm,[3] but Anthony A. hit his head on the fireplace anyway and lost consciousness. Anthony A. regained consciousness three or four minutes later.

Emily L. was also at the bar on December 8, 2021, and saw defendant and Ryan B. get into an argument about eight feet away from her. Defendant got close to Ryan B. and continued moving toward him, even though Ryan B. did not appear comfortable with the proximity. Ryan B. told defendant, " 'Get out of my face,' " and defendant moved closer so that they were face-to-face. Ryan B. pushed defendant backwards, and defendant reacted by swinging a beer bottle at Ryan B. The bottle shattered, although it was not clear if the bottle had hit Ryan B. or the bar. Ryan B. shoved defendant backwards again, and Emily L. yelled for Anthony A. Anthony A. yelled, " 'Hey, knock it off' " and then grabbed defendant, trying to stop the altercation. Defendant had Anthony A. by the shoulders and shoved him backwards, causing the pair to fall, and Anthony A. hit his head on the wood stove. Anthony A. was on the ground, so still he appeared dead.

Emily L.'s boyfriend pushed defendant toward the door, and they both fell. She went to investigate, and defendant kicked Emily L.'s lower calf by her shin. She was standing in front of him, and he was kicking at multiple people in the area, lashing out. He looked angry. Another patron tried to grab defendant, and everyone was yelling at him to get out of the bar. He eventually left, and the bartender locked the doors. On cross-examination, Emily L. agreed that defendant was hard of hearing and sometimes read lips.

The parties stipulated to the admission of a police report, and defendant exercised his right to remain silent and not present additional evidence. Thereafter, the People argued that defendant started the incident with Ryan B., attacked the victims when they tried to intervene, was not reasonably at risk of suffering great bodily injury, and therefore,

---

[3] Judy J. was pushed to the ground during the altercation but could not say it was defendant who pushed her.

5

defendant did not act in self-defense. Defendant countered, arguing his pushing Anthony A. was not the cause of Anthony A.'s injury, he was not the initial aggressor, and had acted in lawful self-defense.

The trial court instructed the jury on the elements of battery causing serious bodily injury (CALCRIM No. 925), self-defense (CALCRIM Nos. 3470, 3471, 3472), and simple battery (CALCRIM No. 960). Thereafter, the jury found defendant not guilty of counts I and III, but guilty of counts II and IV. The trial court denied defendant's oral motion for judgment notwithstanding the verdict.

On January 12, 2024, the trial court denied defendant's request for probation and sentenced defendant to the low term of two years for count II, plus a concurrent term of six months for count IV. The court also imposed a $300 restitution fine (§ 1202.4, subd. (b)), a $300 suspended probation revocation restitution fine (§ 1202.44), a $30 conviction assessment fee (Gov. Code, § 70373), and a $40 court operations assessment fee (§ 1465.8). The court reserved jurisdiction to determine victim restitution and set the restitution hearing for March 8, 2024.

Defendant timely appealed. Appellate briefing in this matter was completed on October 21, 2024.

## DISCUSSION

Appointed counsel filed an opening brief that sets forth the facts and procedural history of the case and requests this court review the record and determine whether there are any arguable issues on appeal. (*People v. Wende*, *supra*, 25 Cal.3d at p. 436.) Defendant was advised by counsel of his right to file a supplemental brief within 30 days from the date the opening brief was filed. Defendant has filed a supplemental brief, which we understand

to challenge the sufficiency of the evidence supporting determinations that he did not act in self-defense at the time of his section 995 motion and following trial.[4]

*The Section 995 Motion*

" 'To prevail on a section 995 motion to set aside an information, the defendant must establish that he was "committed without reasonable or probable cause." [Citation.] To establish probable cause sufficient to withstand a section 995 motion to dismiss, the People must make some showing as to the existence of each element of the charged offense. [Citation.] "Evidence that will justify a prosecution need not be sufficient to support a conviction. [Citations.] ' "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." ' [Citations.] An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]" [Citation.] "[T]he showing required at a preliminary hearing is exceedingly low." [Citation.] An information should be set aside "only when there is a total absence of evidence to support a necessary element of the offense charged." ' " (*Zemek v. Superior Court* (2020) 44 Cal.App.5th 535, 544.) " ' "[E]vidence which will justify prosecution under the above test need not be sufficient to support a conviction." [Citation.]' (*People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 7.)" (*Ibid.*)

" 'When we review a section 995 motion, we "disregard[] the ruling of the superior court and directly review[] the determination of the magistrate." [Citations.] We will not set aside an information "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." [Citation.]' (*People v. San*

---

[4] Defendant's supplemental brief also summarily asks this court to "review the denial of all of the Defendant's motions" and the effectiveness of the representation of his counsel at the preliminary hearing. We have done this in compliance with *People v. Wende*, *supra*, 25 Cal.3d at page 436.

7

*Nicolas* (2004) 3 Cal.4th 614, 654.)" (*Zemek v. Superior Court*, *supra*, 44 Cal.App.5th at p. 544.)

Here, defendant argues insufficient evidence was presented at the preliminary hearing to establish that he was not acting in lawful self-defense. We disagree.[5] The People presented testimony that defendant initiated a verbal altercation with Ryan B. Defendant insulted Ryan B., invaded his personal space, and then swung repeatedly at Ryan B. when Ryan B. tried to push him away. The bar owner (Anthony A.) attempted to intervene as was his legal duty, telling defendant to knock it off and grabbing him. (See, e.g., *Coorough v. De Lay* (1959) 171 Cal.App.2d 41, 45-46) [bar proprietor owes a duty to protect against invitees' dangerous conduct].) Defendant responded by throwing the bar owner to the ground. Similarly, Judy J. and Emily L. attempted to intervene following defendant's assault of the bar owner and were attacked themselves. This evidence constitutes a rational basis for concluding that there was a possibility that defendant was guilty of the crimes charged consistent with the magistrate's determinations. (*Zemek v. Superior Court*, *supra*, 44 Cal.App.5th at pp. 544-545.)

<u>*Defendant's Convictions by Jury*</u>

Defendant also challenges the sufficiency of the evidence supporting the jury's rejection of his claim of self-defense. In reviewing a challenge to the sufficiency of the evidence, our "task is to determine whether, in light of the whole record viewed in the light

---

[5] Given this conclusion, the record does not support that defendant received ineffective assistance of counsel at this hearing. (*People v. Mickel* (2016) 2 Cal.5th 181, 198 ["to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance"]; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.) Moreover, there is nothing in the record suggesting that defendant could have presented additional evidence to establish a claim of self-defense sufficient to defeat the People's showing at the preliminary hearing. On the contrary, defendant was convicted at trial on similar evidence despite his express assertion of self-defense as argued by his retained counsel of choice. Accordingly, defendant cannot establish he was prejudiced by counsel's alleged deficient performance. (*Mickel*, at p. 198.)

most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt." (*People v. Felix* (2009) 172 Cal.App.4th 1618, 1624.) We " ' "must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 739.) "The credibility of witnesses and the weight accorded the evidence are matters within the province of the trier of fact." (*People v. Ramos* (2004) 121 Cal.App.4th 1194, 1207.) We " 'must accept logical inferences that the [trier of fact] might have drawn from the evidence even if [we] would have concluded otherwise.' " (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the trier of fact's finding.]' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

The jury was instructed the People had to disprove beyond a reasonable doubt that defendant believed he was in imminent danger of suffering bodily harm, reasonably believed force was necessary to defend against the danger, and used no more force than was reasonable. (CALCRIM No. 3470.) The jury was also instructed that if defendant started the fight, he had the right to self-defense only if he, in good faith, tried to stop fighting. (CALCRIM No. 3471.) Finally, the trial court instructed the jury that defendant could not provoke a quarrel so that he could then excuse his use of force. (CALCRIM No. 3472.)

Substantial evidence supports the jury's determination that defendant did not act in lawful self-defense when he battered Anthony A., who had merely intervened to aid Ryan B., or when he battered Emily L., who came to Anthony A.'s aid. There is substantial evidence suggesting defendant intentionally incited the fight when he called Ryan B. a "badass," invaded his personal space, and refused requests to back away. Moreover, the evidence also supports an inference defendant acted disproportionately in response to being pushed back from his unwanted advances by trying to hit Ryan B. three times with a beer bottle that broke sometime prior to Anthony A.'s intervention either from colliding with

9

Ryan B. or the bar.  This disproportionate behavior continued in defendant's response to Anthony A.'s command to "knock it off" and grabbing of his swinging arm in an attempt to stop the fight, to wit, his throwing Anthony A. to the ground and then kicking Emily L.

Having disposed of defendant's specific complaints and having undertaken an examination of the entire record pursuant to *Wende*, we find no arguable errors that are favorable to defendant.  Accordingly, we will affirm the judgment.

DISPOSITION

The judgment is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
DUARTE, Acting P. J.

/s/
KRAUSE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.